REMINGTON RAND, Inc., Plaintiff,

v.

KNAPP–MONARCH COMPANY,
Defendant.

Civ. A. No. 19001.

United States District Court
E. D. Pennsylvania.

March 14, 1956.

Zachary T. Wobensmith, 2nd, Philadelphia, Pa., for plaintiff.

George J. Harding, 3rd (of Busser, Smith & Harding), Philadelphia, Pa., Will Freeman and Norman Lettvin (of Bair, Freeman & Molinare), Chicago, Ill., of counsel, for defendant.

WRIGHT, District Judge.

This is an action for declaratory judgment involving charges made by defendant that plaintiff is infringing its patent.[1] Plaintiff, Remington Rand, Inc., is a Delaware corporation with an office and place of business at Philadelphia, Pennsylvania. Defendant, Knapp-Monarch Company, is a Delaware corporation with its principal place of business at St. Louis, Missouri. The defendant, Knapp-Monarch Company, has filed a motion to dismiss the complaint or in lieu thereof to quash the return of summons. Two grounds advanced in support of the motion are improper venue and improper service of process.

The motion to dismiss the complaint on the ground venue is improper raises several problems. The court must first determine whether the general venue statute, 28 U.S.C. § 1391[2] or the special patent venue statute, 28 U.S.C. § 1400 (b),[3] governs a declaratory judgment action involving construction of a patent. If the general venue statute controls, it must then be decided whether Knapp-Monarch is "doing business" within the meaning of that statute. If the special patent venue statute is the applicable provision, the court must determine whether the definition of corporate residence in the general venue statute is incorporated into the special patent venue statute.

The defendant asserts a declaratory judgment action for non-infringement of a patent is a patent suit in reverse, and therefore the special patent venue statute, 28 U.S.C. § 1400(b), applies. Because defendant's argument ignores the wording of the statute it cannot be sustained. The special patent venue statute applies to "any civil action for patent *infringement*"[4] and does not apply to a declaratory judgment action for *non-infringement* of a patent. Furthermore, if the special patent venue statute controlled, venue in a declaratory judgment action for non-infringement of a patent would be restricted to the state of incorporation unless the meaning of

---

1. U. S. Letters Patent No. 2,253,037.

2. The pertinent provision of 28 U.S.C. § 1391 is subsection (c) which reads as follows:

 "(c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

3. 28 U.S.C. § 1400(b) reads as follows:

 "(b) Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."

4. Emphasis added.

corporate residence as defined in § 1391 (c) were incorporated into § 1400(b).[5] This necessarily would be the result because in a suit for declaration of non-infringement of a patent, the complaint would never allege commission of acts of infringement since the alleged patent owner is always the defendant. Finally, there is a considerable body of authority, both before and after revision of the Judicial Code, to the effect that the controlling venue provision in declaratory judgment actions for non-infringement of a patent is the general venue statute.[6]

Among these authorities is Crosley Corporation v. Westinghouse Electric & Manufacturing Co.,[7] which defendant correctly asserts stands for the proposition that "declaratory judgment suits can only be brought in the home district of a patent owner or, in the case of a corporate owner, in those foreign states only in which it has made arrangements to be served with process, * * *."[8] However, on petition for rehearing in the Crosley case it was emphatically pointed out that while the venue of a patent infringement suit is governed by the special patent venue section, declaratory judgment actions for non-infringement of a patent are controlled by the general venue provision.[9] Since the general venue statute upon which the Third Circuit based its formulation has been amended,[10] the correct venue for a declaratory judgment action for non-infringement of a patent has likewise been broadened in conformity with the amendment. Thus the general venue provision, 28 U.S.C. § 1391, is the controlling venue section in a declaratory judgment action for non-infringement of a patent, and therefore, it is unnecessary to determine whether the definition of corporate residence found in § 1391(c) is incorporated into § 1400(b).[11] However, there remains the problem of whether the Eastern District of Pennsylvania is a proper venue for this action. The solution to this problem depends upon whether the activity of Knapp-Monarch within the Eastern District of Pennsylvania constitutes "doing business" within the meaning of 28 U.S.C. § 1391(c).

Congress has defined the proper locality for the trial of a case against a foreign corporation.[12] Thus, a foreign corporation may be sued: 1) where it is incorporated, 2) where it is licensed to do business, or 3) where it is doing business. Where as here, the foreign corporation is neither incorporated, nor li-

5. If the definition of corporate residence as found in § 1391(c) were found to be incorporated into § 1400(b), the problem as to the proper venue statute to be applied in this type of action insofar as corporate defendants are concerned would become academic since the special patent venue statute would be broadened so as to include all of the applicable provisions of the general venue statute.

6. American Chemical Paint Co. v. Dow Chemical Co., 6 Cir., 1947, 161 F.2d 956; Crosley Corporation v. Westinghouse Electric & Manufacturing Co., 3 Cir., 1942, 130 F.2d 474; E. I. Du Pont De Nemours & Co. v. Byrnes, 2 Cir., 1939, 101 F.2d 14; Ronson Art Metal Works, Inc., v. Brown & Bigelow, Inc., D.C.S.D. N.Y.1952, 104 F.Supp. 716; Lisle Mills, Inc., v. Arkay Infants Wear, Inc., D.C. E.D.N.Y.1949, 84 F.Supp. 697; American Blower Corporation v. B. F. Sturtevant Co., D.C.S.D.N.Y.1945, 61 F.Supp. 756.

7. 3 Cir., 1942, 130 F.2d 474.

8. Id., 130 F.2d at page 476.

9. Id.

10. 28 U.S.C. § 1391(c), formerly 28 U.S.C. § 112.

11. This question has caused a division among the circuits. Cases holding that 28 U.S.C. § 1391 has no application to 28 U.S.C. § 1400(b) are: Ruth v. Eagle-Picher Co., 10 Cir., 1955, 225 F.2d 572; C-O-Two Fire Equipment Co. v. Barnes, 7 Cir., 1952, 194 F.2d 410, affirmed per curiam by an equally divided court sub nom, 1952, 344 U.S. 861, 73 S.Ct. 102, 97 L.Ed. 695; Otto v. Koppers Company, Inc., D.C.N.D.W.Va.1955, 134 F.Supp. 886; Gulf Research & Development Co. v. Schlumberger Well Surveying Corp., D.C.S.D.Cal.1950, 92 F.Supp. 16; and Nachtman v. Jones & Laughlin Steel Corp., D.C.1950, 90 F.Supp. 739; contra, Dalton v. Shakespeare Co., 5 Cir., 1952, 196 F.2d 469; Farr Co. v. Gratiot, D.C.S.D.Cal.1950, 92 F.Supp. 320.

12. 28 U.S.C. § 1391(c).

censed to do business in the district in which suit is instituted, the problem arises as to what degree of activity within the district a foreign corporation must engage before a particular district becomes a proper locality in which to compel a foreign corporation to initially defend.

Neither § 1391(c) nor the Reviser's notes supply any direct indication as to the proper frame of reference to be employed in deciding how much activity a foreign corporation must engage before it is held to be "doing business". However, a strong hint as to Congressional intent is found by examination of § 1391 (c) and its background. The background of § 1391(c) is found mainly in the decision of the Supreme Court in Neirbo Co. v. Bethlehem Shipbuilding Corp., Ltd.[13] and the myriad of unanswered questions which arose in the wake of that decision. The Neirbo case held a foreign corporate defendant waived the provisions of the federal venue statute, which it would otherwise have been able to assert, when it appointed an agent for receipt of service of process as required by the law of the state in which the corporation was doing business. The applicable venue statute[14] at the time of the Neirbo decision provided suits under federal laws must be brought in the district of the defendant's residence, and in diversity cases in the district in which either the plaintiff or defendant resided. The immediate effect of Neirbo was to substantially broaden by judicial construction the narrow venue choice conferred upon plaintiff by statute.[15]

The problem arose as to whether the Neirbo rule applied to foreign corporations which violated state laws by refusal or failure to appoint an agent to accept service of process as a condition precedent to doing business within the state. Some federal courts held it did not, i. e., failure to appoint a statutory agent for receipt of service of process resulted in non-waiver of the privilege of asserting the venue defense.[16] Thus, the anomalous result was produced whereby law abiding corporations waived their venue privilege while non-conforming corporations, by reason of their refusal to obey state law, were able to assert a venue defense.

Upon revision of the Judicial Code, Congress, in effect, adopted the result of the Neirbo case in enacting the venue provision of the Judicial Code dealing exclusively with corporate defendants.[17] Congress achieved the result of Neirbo, without reliance upon a concept of waiv-

---

13. 1939, 308 U.S. 165, 60 S.Ct. 153, 84 L. Ed. 167. While § 1391(c) dealing with the residence of a corporate defendant is not based on any theory of waiver which underlies Neirbo, nonetheless the results of Neirbo prompted the Revisers to adopt subsection (c) of § 1391. See Moore, Commentaries on the U. S. Judicial Code, 194.

14. 18 Stat. 470 (1875), 28 U.S.C. § 112 (1927).

15. Prior to the Neirbo decision a foreign corporation could have any action based upon a federal question, which was brought in a district in which it was merely doing business, dismissed for improper venue on the ground that it was not an inhabitant of the state; in diversity cases, brought by non-residents, the foreign corporation doing business within the state could procure dismissal by asserting improper venue on the grounds that neither the plaintiff nor the foreign corporation were residents of the state.

16. Moss v. Atlantic Coast Line R. Co., 2 Cir., 1945, 149 F.2d 701; Robinson v. Coos Bay Pulp Corp., 3 Cir., 1945, 147 F.2d 512; see also: Knobloch v. M. W. Kellogg Co., 5 Cir., 1946, 154 F.2d 45.

17. See Moore, Commentaries on the U. S. Judicial Code, 194; also see, Ruth v. Eagle-Picher Co., 10 Cir., 1955, 225 F.2d 572, at page 577, where the court said:
"The phrase in subsection (c) of § 1391, 'in which it is incorporated or licensed to do business,' merely writes into the venue section the effect of the decision of the Supreme Court in Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167. The phrase in subsection (c), 'or is doing business,' extends the philosophy of that case to the act of doing business. * * *"

er or reference to appointment of a statutory agent, by making the focal point of the statute the obtaining of a *license to do business* by the corporation. At the same time the result of those decisions which conferred the venue defense on the non-conforming corporation was removed by providing venue would be proper if a corporation were "doing business" within the district.

■ Viewed in this background, Congressional intent as to the proper frame of reference to be employed in defining "doing business" as used in § 1391(c) becomes clear. In determining how much activity within a district a foreign corporation must engage before such activity will constitute "doing business" for purposes of federal venue, the basic consideration is whether a license would be required of the foreign corporation as a condition precedent to carrying on that activity. However, it would be erroneous to make the propriety of venue dependent upon the licensing law of any one particular state, since determination of the correctness of plaintiff's choice of locality for his law suit against a corporate defendant necessarily envisages application of a uniform federal standard. At the same time, a test for "doing business" which requires examination of the laws of all the states to determine whether any one state might require a license on the basis of the activity engaged in would be a useless yardstick.

No attempt will be made to establish criteria which definitively mark the boundary line between proper and improper venue. Congress has decreed state licensing requirements closely approximate the desired balance between the aggrieved plaintiff who might be penalized if the foreign corporation were not required to answer in any vicinity where its activity might cause an alleged injury and the resulting inconvenience to the foreign corporation forced to defend far from home. With this balance as a guiding principle, it can be said the activity must be of such a nature so as to localize the business and make it an operation within the district.

The court is not unmindful of the force of the argument that "doing business" in § 1391(c) means "doing business for purposes of service of process." [18] The courts holding this view buttress their argument by pointing to the Neirbo decision which, because of the waiver principle employed, had as its foundation, the appointment of an agent for receipt of service of process.

Since "doing business" can mean doing business for purposes of requiring a foreign corporation to be licensed or doing business for purposes of amenability to service of process, it must be determined whether there is any difference in the amount of activity in which a foreign corporation must engage before it will be held to be "doing business" for either purpose.

There is a distinction between the activity necessary to constitute the doing of business so as to be amenable to service of process and the activity necessary to constitute the doing of business so as to be subject to licensing statutes. [19] The prevailing dogma indicates more activity is required for the doing of business for the latter purpose than for the former, [20] notwithstanding the absence

18. Riverbank Laboratories v. Hardwood Products Corp., 7 Cir., 1955, 220 F.2d 465, certiorari granted 350 U.S. 817, 76 S.Ct. 47, Arg. held Jan. 16, 1956, 24 L.W. 3009 and 3210; Consolidated Cosmetics v. D–A Pub. Co., Inc., 7 Cir., 1951, 186 F.2d 906.

19. 20 C.J.S., Corporations, § 1828.

20. See Liquid Veneer Corp. v. Smuckler, 9 Cir., 1937, 90 F.2d 196, 202:
 "A foreign corporation may be doing business in a state to bring it within the jurisdiction of the court and amenable to its process and yet not obtain a status to be regulated by a state statute or bring it within the statutory provision requiring a license for operation of such foreign corporation. * * *"
 See also Bendix Home Appliances, Inc., v. Radio Accessories Co., 8 Cir., 1942, 129 F.2d 177, 181:
 "The activities of a foreign corporation which are sufficient to make it

**618**

of a due process constitutional limitation on the power of a state to require a license of a foreign corporation.[21] Therefore whether "doing business" in § 1391 (c) relates to that amount of activity as used to determine whether a foreign corporation must procure a license or as used in solution of service of process questions will directly affect the breadth of the venue provision.[22]

On the wording of the statute alone, it makes far better sense to say the phrase, "doing business", was inserted to deprive the non-conforming corporation of a venue defense, rather than to say the phrase refers to the unmentioned service of process concept. Further, if the service of process concept of doing business were used to determine whether a venue choice is proper, the ultimate result would be that venue is proper wherever a corporation is subject to service of process. Since Congress did not articulate such a wide sweeping venue provision, it is difficult to perceive that it ever intended such a result. In fact, that such was not the intended result becomes obvious by an examination of 28 U.S.C. § 1406(a), which provides among other things for transfer to another district in the event of improper venue. If venue were improper by reason of the employment of the service of process concept of "doing business", it would mean

that wherever venue would be improper there would also be a fatal service of process defect so as to bar transfer and leave dismissal for lack of jurisdiction over the defendant as the only remedy. It can be argued that the provision of § 1406(a) applies in all cases except where a corporate defendant is involved, but if such an exception is to be carved out of the statute, it should be done by Congress rather than by judicial construction, especially where a different construction would permit § 1406(a) to be applied to all cases of improper venue.

■ The wording of the statute, and the impossibility of concluding that venue is proper wherever service of process can be had, necessarily compels this court to determine that "doing business" as that phrase is employed in the general venue statute, § 1391(c), refers to its usage in the licensing concept. However, not only must the activity be of such a nature so as to localize the business and make it an operation within the district but, quantitatively, such activity must be more than the minimum amount of activity needed to meet a constitutional due process objection where a question of amenability of a foreign corporation to service of process is raised. Any reference in federal venue problems to the "principles of fairness test",[23] employed in amenability to serv-

---

amenable to process within a state by service upon an officer of the state or upon the corporation may be less than those required to subject the corporation to the provisions of the state's licensing and taxation statutes. * * * "

21. Among the reasons advanced in support of requiring less activity to make a foreign corporation amenable to service of process than to subject it to a state's licensing requirement is that procurement of a license causes a foreign corporation to be vulnerable to state regulation. In addition, failure of a foreign corporation to procure a license when it has transacted business within a state can result in harsh penalties such as inaccessibility to the courts and fines. See McMaster v. Robinson's Women's Apparel, Inc., D.C.Neb.1942, 45 F.Supp. 99, 102.

22. In most instances, foreign corporations which are subject to the licensing requirement of a state are also amenable to service of process. This result occurs not only because less activity is required for service of process than for licensing, but also because in most instances, compliance with state licensing statutes includes the appointment of a statutory agent for service of process against the licensed corporation.

23. International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95:
"* * * due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair

ice of process matters, is improper unless used only to point out more activity is required in venue cases than would be necessary to satisfy constitutional due process if a question of amenability to service of process were raised on the identical facts.[24]

Faced with two possible alternatives as to the meaning of "doing business" in § 1391(c), for reasons heretofore stated, this court is of the opinion the alternative which yields to plaintiff a narrower choice of venue against corporate defendants should be employed. Nevertheless, there might be some objection that corporate defendants have still been subjected to too wide a venue choice on the part of plaintiffs. However, there are several compelling reasons for adopting this position. If a test for "doing business" were employed which required more activity than that amount upon which any state would require a license of a foreign corporation as a condition precedent to doing business in the state, i. e., more activity than is required to localize the business and make it an operation within the state, the ultimate and undesirable result would be that federal venue would vary with the licensing requirements of the individual states. Thus, federal venue rather than be construed by uniform federal standards, would vary from district to district, being dependent upon the interpretation by the state in which the district is located of its licensing requirement for foreign corporations. The conclusion that Congress intended this wide a venue choice for plaintiff is supported by the fact that if a foreign corporation procures a license to do business even though its activity may not be such as to warrant the necessity of procuring such a license, venue would nonetheless be proper.[25]

Furthermore, no harm is done by this construction. While Congress in codifying and extending the results of Neirbo finally gave recognition to the expansion of the activities of the foreign corporation and its corresponding duty to defend in the locality where it reaps its profits, it also recognized the unfair burden to which corporate defendants could be put. This recognition was manifested by the inclusion of the transfer provisions as part of a comprehensive integrated venue scheme. Thus, where venue is proper, but less convenient than in some other district, defendant can make application for transfer.[26]

Applying the above principles to the facts of this case requires close scrutiny of the activities of Knapp-Monarch in the Eastern District of Pennsylvania. From depositions and affidavits, it is clear that Knapp-Monarch is not a Pennsylvania corporation, nor is it qualified or licensed to do business in Pennsylvania, nor has anyone ever been appointed by the defendant for purposes of receiving service of process.

On the other hand, it is clear that a considerable volume of business is done by Knapp-Monarch in the Eastern District of Pennsylvania through direct sale of traffic appliances [27] to distributors for

play and substantial justice.' "

See Perkins v. Benguet Consolidated Mining Co., 1952, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485; also see, Polizzi v. Cowles Magazines, 1953, 345 U.S. 663, 73 S.Ct. 900, 97 L.Ed. 133, where the Supreme Court remanded to the district court for the lower court's consideration the question of whether or not the defendant was doing business so as to justify service of process upon it within the district.

24. Ronson Art Metal Works, Inc., v. Brown & Bigelow, Inc., D.C.S.D.N.Y. 1952, 104 F.Supp. 716, 723.

25. See California Stucco Products of N. E., Inc., v. National Gypsum Co., D.C. Mass.1940, 33 F.Supp. 61, where applying the Neirbo rule, it was held that appointment of an agent for service of process was sufficient to "waive" the privilege of the federal venue statute, notwithstanding the foreign corporation was not *doing business* in the sense that liability for service of process was insured.

26. § 1404(a).

27. A nonexhaustive list of traffic appliances are: Electric blankets, blenders, vacuum type coffee makers, hair dryers,

resale. In addition, invoices from Knapp-Monarch and letterheads of Knapp-Monarch show sales office listings which include Philadelphia, although the depositions either did not or could not establish where this sales office was located. Knapp-Monarch also employs a sales representative in the area who calls upon distributors of Knapp-Monarch for purposes of soliciting their business and who, at least in one instance aided in the adjustment of a complaint between the distributor and Knapp-Monarch.[28] While the sales representative solicits orders, he has nothing to do with delivery or payment since the goods are shipped direct from Knapp-Monarch to the distributor and cash remittances are made directly to Knapp-Monarch.

Knapp-Monarch engages in direct advertising in the district through the media of trade magazines, magazines of general public interest and as a sponsor of television programs.

Finally, there is included within the package of each traffic appliance sold to the ultimate consumer a warranty and guarantee running from Knapp-Monarch to the ultimate consumer. In order to provide a method whereby its obligation under the guaranty to the consumer can be fulfilled, Knapp-Monarch established "authorized service stations" to make the necessary repairs and replacements of defective parts. In this instance, the authorized service station for the Philadelphia area is Arnold Co., Inc. Among other things provided in the contract entered into in 1946 between Knapp-Monarch and M. E. Arnold and Company, the predecessor of Arnold Co., Inc. was an agreement fixing a price for repair parts; a sale-resale agreement establishing a fixed percentage of profit for Arnold Co., Inc. on parts used in "in-guaranty" repair work; a fixed labor rate for repair work done within the guaranty period, and a suggested labor rate for out-of-guaranty work; an agreement to channel repair work to Arnold Co., Inc.; and an agreement by Arnold Co., Inc. to report repair service performed at regular intervals and on blanks supplied by Knapp-Monarch although Knapp-Monarch later agreed to allow Arnold Co., Inc. to use their own forms. In addition, the contract also covered such items as time of payment and payment of postage. Finally, there was a provision inserted in the agreement whereby Arnold Co., Inc. agreed to advertise that it serviced products of Knapp-Monarch by telephone directory advertising and local advertising.

The effect of the warranty to the consumer enclosed within the package containing the traffic appliance is to establish a contractual relationship between Knapp-Monarch and every one of its ultimate consumers. This warranty was part of the sale and Knapp-Monarch was undeniably obligating itself to the consumer in the event of damage, injury or failure of the appliance within the scope of the guarantee. The selection of Arnold Co., Inc. as an authorized service station to fulfill the contractual obligation undertaken by Knapp-Monarch to the consumer in no way negates the participation of the defendant in every sale to the ultimate consumer within this judicial district. In addition, despite the detailed provisions for compensation to Arnold Co., Inc. the relationship between Knapp-Monarch and Arnold Co., Inc. with respect to the "in-guaranty" repair work is so akin to an agency relationship through which defendant discharges its obligations to the ultimate consumer, that for this purpose, it will be treated as an agency relationship.

In view of the principle enunciated earlier, namely, a corporation will be held to be "doing business" for purposes of § 1391(c) if its activities within the district are such that its business has become localized and is an operation within the district[29] so that some state would

---

fans, deep fat fryers, frypans, hand irons, food mixers, heating pads, corn poppers, vaporizers, massage vibrators, waffle irons and electric razors.

28. (Pre-trial oral examination, p. 15.)

29. If the activity is such so as to become localized and an operation within the

probably require the foreign corporation to be licensed as a condition precedent to doing that business, it is the opinion of this court the activity of Knapp-Monarch in the Eastern District of Pennsylvania, is sufficient to constitute the doing of business within the meaning of § 1391 (c). Therefore, the Eastern District of Pennsylvania is a proper venue for this action.

While the court has dwelled at some length on the question of whether Knapp-Monarch was doing business within the meaning of § 1391(c), it should be mentioned that the only attack made on venue was addressed to the applicable venue section of the Judicial Code, i. e., whether to apply § 1391(c) or § 1400(b). Defendant, having failed to raise objection to § 1391(c) as applied to its activity within this district as constituting "doing business" conceivably waived this venue objection by restricting itself to the problem of the applicable statute.[30]

There remains one question, namely, whether service of process on Knapp-Monarch was in accordance with Federal Rule of Civil Procedure 4(d) (3).[31] Service of the summons and complaint was made upon Arnold Co., Inc. as agent of Knapp-Monarch. It is the contention of defendant that Arnold Co., Inc. was not a general or managing agent of Knapp-Monarch within the meaning of Rule 4(d) (3) of the Federal Rules of Civil Procedure, and consequently this court did not have jurisdiction over defendant because of improper service.

 Service on Arnold Co., Inc. was sufficient so as to effect proper service of process on Knapp-Monarch. Where as here, the activity of defendant in this district is sufficient so as to make it amenable to suit,[32] service of process upon a responsible party in charge of any substantial phase of that activity is sufficient for effective service of process.[33] This result is necessary or else a for-

state, a fortiori, it is more activity than that needed to meet a due process objection to a hypothetical amenability to service of process objection.

30. See Mincy v. Detroit & Cleveland Navigation Co., D.C.S.D.N.Y.1950, 94 F. Supp. 456.

31. Fed.R.Civ.P. 4(d) (3), 28 U.S.C., reads as follows:

"(d) Summons: Personal Service. The summons and complaint shall be served together. The plaintiff shall furnish the person making service with such copies as are necessary. Service shall be made as follows:

\* \* \* \* \*

"(3) Upon a domestic or foreign corporation or upon a partnership or other unincorporated association which is subject to suit under a common name, by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant."

32. Federal Rule of Civil Procedure 4(d) (3) tells how service of process is to be made on a foreign corporation which is subject to service but does not state the criteria to determine which foreign corporation is subject to service of process. Without belaboring another point not raised by counsel, let it suffice to say that Knapp-Monarch, by reason of its employee-solicitor (sales representative), warranty to every consumer and contract for repair work with Arnold Co., Inc., has carried on sufficient activity within the Eastern District of Pennsylvania not only to find this district a proper venue but also so as to justify service of process upon it within this district. International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95; Green v. Chicago, Burlington & Quincy Railway Co., 1907, 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916. Furthermore, where there is raised a question of exclusive federal jurisdiction and venue is proper and a responsible representative of the corporation within the state in which the district lies is served with process, there is no basis upon which a foreign corporation can be heard to object to service of process on constitutional grounds.

33. For analogous situations, cf.: Consolidated Cosmetic v. D–A Pub. Co., Inc., 7 Cir., 1951, 186 F.2d 906; Satterfield v. Lehigh Valley Railroad Co., D.C.S.D. N.Y.1955, 128 F.Supp. 669.

eign corporation with a multitude of activities of equal rank and importance within any particular district could evade service of process by the simple expedient of being careful to place no one in general charge of all the activity. Such an untenable result would be directly contra to the directive contained in Rule 1 of the Federal Rules of Civil Procedure which provides that the Rules "shall be construed to secure the just, speedy, and inexpensive determination of every action." Consequently, where there is solicitation and servicing done by different people, and the contract between Knapp-Monarch and Arnold Co., Inc. creates something akin to an agency relationship insofar as "in-guaranty" work is concerned, service upon Arnold Co., Inc. the corporation in charge of discharging Knapp-Monarch's warranty obligation to consumers, is sufficient so as to constitute effective service of process on Knapp-Monarch.

Motion denied.

An order in accordance herewith may be submitted.