**Herman RENSING, Plaintiff**

v.

**TURNER AVIATION CORPORATION, Defendant.**

**No. 58 C 82.**

United States District Court
N. D. Illinois, E. D.
Oct. 22, 1958.

Nathan & Klafter, Chicago, Ill., for plaintiff.

McHale, Cook, Welch & McKinney, Indianapolis, Ind., by Hopkins, Sutter, Owen, Mulroy & Wentz, Chicago, Ill., for defendant.

CAMPBELL, District Judge.

Plaintiff, Herman Rensing, a citizen and resident of California, sues the defendant, Turner Aviation Corporation, an Indiana corporation, alleged by the plaintiff to be doing business in this District, for personal injuries allegedly sustained while a passenger in defendant's plane which crashed to the ground at or near Grant Park, Illinois, on March 6, 1957. The complaint bases jurisdiction on Title 28 U.S.C. §§ 1332 and 1391.

The defendant has filed a motion to dismiss the complaint or quash the return of summons contending that service of process could not properly be made upon it in Illinois under Rule 4(d) F.R. Civ.P., 28 U.S.C.A., because the defendant, a foreign corporation, was not "doing business" in this District so as to be present for jurisdictional purposes. Service of process upon the president of the defendant while he was temporarily present in this District the defendant states does not act to bring the corporation within the jurisdiction of this Court. The defendant further maintains that the question of what constitutes "doing business" is one of Federal and not State law.

The plaintiff maintains that the defendant was "doing business" in Illinois so as to be present for jurisdictional purposes and was therefore subject to service of process. The plaintiff agrees that the question of what constitutes "doing business" is one of Federal and not State law.

The affidavits submitted by the parties indicate that the defendant has never been licensed to do business in Illinois; nor owned any property the business situs of which is in Illinois; nor maintained any facility for conducting business in Illinois; nor employed or retained officers or agents in Illinois. The plaintiff's affidavit states that planes operated by the defendant land at Midway Airport in the City of Chicago "with regularity" and that such planes "principally carry passengers for hire from points in Indiana; and that a lesser part of it's regular business is the carrying of passengers for hire from the City of Chicago to various points of Indiana and elsewhere." Defendant's affidavit shows that for a period of fourteen (14) months prior to the accident, the defendant made the following flights into Illinois:

1. No intrastate flight in Illinois;
2. Eight (8) one-way flights into Illinois;
3. Two (2) one-way flights out of Illinois;
4. Seven (7) round-trip flights from a point outside Illinois to a point in Illinois and return.

It further appears that Roscoe Turner, a resident of Indiana and president of the defendant corporation, was served with a summons and complaint herein directed against the corporation while he was temporarily present in Chicago, Illinois, on personal business. The issue now presented by the pleadings is whether or not the defendant, Turner Aviation Corporation, was "doing business" within this Judicial District so as to be considered "present" here for jurisdictional purposes. As stated above, both parties maintain that this issue should be decided solely by Federal law. I think both are incorrect.

I find a great deal of confusion among the decisions in regard to the term "doing business." Much of this confusion seems to be due to the fact that in some instances Federal law has been applied in its interpretation while in other cases, State law has governed its interpretation. Further confusion stems from the fact that Title 28 U.S.C.A. § 1391(c) provides in regard to venue that a foreign corporation may be sued where it is "doing business" while presence of a foreign corporation for jurisdictional purposes is often governed by the same phrase, "doing business." An example of this is seen in Riverbank Laboratories v. Hardwood Prod. Corp., 7 Cir., 220 F.2d 465, where upon a motion to dismiss because of improper *venue*, the Court applied State law in interpreting "doing business." The Court relied directly upon Canvas Fabricators Inc. v. William E. Hooper & Sons Co., 7 Cir., 199 F.2d 485, which case however was predicated upon a motion to quash summons because of lack of *jurisdiction* over the person of a foreign corporation. In this case the question of whether a foreign corporation was "doing business" within the State and hence "present" for jurisdictional purposes was quite properly decided according to State law. The Riverbanks case considering the question of improper *venue* under Title 28 U.S.C. § 1391(c) apparently overlooked the fact that the Canvas case was one of *jurisdiction* and not of venue and applied the same State test for "doing business" and was therefore later reversed by the United States Supreme Court in 350 U.S. 1003, 76 S.Ct. 648, 100 L.Ed. 866. For the reasons I shall try to point out it is my opinion that the law clearly requires questions of venue to be decided by Federal law and questions of jurisdiction in diversity cases to be decided by the law of the State wherein the particular U. S. District Court is sitting.

When Swift v. Tyson, 16 Pet. 1, 41 U.S. 1, 10 L.Ed. 865 representing a doctrine of a Federal common law free from the authority of State courts was overruled by Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, a new policy concerning the proper distribution of judicial power between State and Federal Courts was proclaimed by the Supreme Court. "In essence, the intent of that decision was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court. The nub of the policy that underlies Erie R. Co. v. Tompkins is that for the same transaction the accident of a suit by a non-resident litigant in a federal court instead of in a State court a block away, should not lead to a substantially different result." Guaranty Trust Co. v. York, 326 U.S. 99, 109, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079.

Today, this policy is recognized by Congress in Title 28, U.S.C.A. § 1652 which provides:

"The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply."

Thus, it is generally stated that in diversity of citizenship cases, all sub-

stantive matters are controlled by State law while purely procedural matters, that is procedural matters which do not affect the substantive rights of the parties are controlled by Federal law. Guaranty Trust Co. v. York, supra; Occidental Life Ins. Co. of California v. Kielhorn, D.C., 98 F.Supp. 288; Brookshire v. Pennsylvania R. Co., D.C., 14 F.R.D. 154; Cyclopedia of Federal Procedure, Sec. 6.03.

Title 28 U.S.C.A. § 1391, entitled Venue Generally provides in subsection (c) as follows:

"A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes."

It was noted before that a state may gain jurisdiction over a foreign corporation by a number of ways. However, the most usual way for a state to gain personal jurisdiction over a foreign corporation occurs when the corporation is "doing business" within the state because then it is present within the state and is thus amenable to process. Fletcher, Cyclopedia of Corporations Sections 8639–8648; Cyclopedia of Federal Procedure Sec. 11.76.

Therefore, since the phrase "doing business" is found in Title 28 U.S.C.A. § 1391(c) in regard to venue and also is used with regard to the basic jurisdiction of the Court over the person of a foreign corporation, the following problems are presented:

1. Should Federal or State law govern the interpretation of the phrase "doing business" as contained in the venue section, 1391 (c) of the United States Code;

2. Should Federal or State law be applied in deciding whether a corporation is "doing business" within the judicial district of the court so that it is "present" for jurisdictional purposes and thus amenable to service;

3. Should the same test for "doing business" be applied in both instances.

■ In considering these problems, it is important to distinguish between jurisdiction of the subject matter, jurisdiction over the person and venue. Jurisdiction of the subject matter is the fundamental power of the Court to hear and decide a cause on its merits and therefore is beyond the scope of litigants to confer. It is clearly distinguished from venue in Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167. Jurisdiction over the person is the power of the Court over the parties obtained by process or appearance. To distinguish this from venue see Robertson v. Railroad Labor Board, 268 U.S. 619, 45 S.Ct. 621, 69 L.Ed. 1119. Venue on the other hand merely relates to the place where a suit may be heard and is a personal privilege of a party which may be asserted or waived. Commercial Casualty Ins. Co. v. Consolidated Stone Co., 278 U.S. 177, 49 S.Ct. 98, 73 L.Ed. 252. Cyclopedia of Federal Procedure, Sections 4.01, 4.49, 4.5. The essence of venue is "to save defendants from inconveniences to which they might be subjected if they could be compelled to answer in any district, or wherever found." General Investment Co. v. Lake Shore & M. S. Ry. Co., 260 U.S. 261, 43 S.Ct. 106, 113, 67 L.Ed. 244. Thus, it can be seen that a district court may have jurisdiction over the subject matter and may obtain personal jurisdiction over the defendant by service of process and yet the defendant may defeat the suit in that District by asserting his privilege of venue, if venue is not proper in the district. Cyclopedia of Federal Procedure, Sec. 4.14. Title 28 U.S.C.A. § 1406.

It has been consistently held that venue in Federal courts is not affected or limited by State legislation, but is wholly a matter of congressional control and legislation. Doyle v. Loring, 6 Cir., 107 F. 2d 337; State Public School Bldg. Authority v. Maryland Casualty Co., D.C., 127 F.Supp. 902; Cyclopedia of Federal

Procedure Sec. 4.01. Further it has been stated that:

> "Essentially venue is an incidence of procedure. It is a part of that body of law which bounds and delineates the forum and the manner and mode of enforcing a litigant's rights. It is distinguishable from and is not within the field of law, known as substantive, which recognizes, creates and defines rights and liabilities and causes of action." Hadlich v. American Mail Line, D.C., 82 F.Supp. 562.

■ Therefore, in line with this reasoning a series of cases, with which I agree, have held that the interpretation of "doing business" under the venue section, Title 28 U.S.C.A. § 1391(c) is controlled solely by Federal and not by State law. Consolidated Cosmetics v. D-A Pub. Co. Inc., 7 Cir., 186 F.2d 906; Martin v. Fischbach Trucking Co., 1 Cir., 183 F.2d 53; Murphree v. Mississippi Pub. Corp., 5 Cir., 149 F.2d 138; Singleton v. Atlantic Coast Line R. Co., D.C., 20 F.R.D. 15; State Public School Building Authority v. Maryland Casualty Co., D.C., 127 F.Supp., 902, 904; Glick v. Empire Box Corp., D.C., 119 F.Supp. 224; Kertes Mfg. Corp. v. Speidel Corp., D.C., 93 F.Supp. 483; Olympic Radio & Television, Inc., v. Hazeltine Research, Inc., D.C., 85 F.Supp. 579.

The interpretation of "doing business" under Sec. 1391(c) must then be established according to Federal law. In my opinion the best exposition of this interpretation may be found in Remington Rand, Inc., v. Knapp Monarch Co., D.C., 139 F.Supp. 613. Neither Sec. 1391 nor the revisers' notes supply any direct indication as to deciding how much activity a foreign corporation must engage in before it is held to be "doing business" under this Section. The Supreme Court partly filled the void in Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167, which holds that a foreign corporation waived the provisions of the applicable venue statute when it appointed an agent for receipt of service of process as required by the law of the state in which the corporation was doing business. However, what if a foreign corporation violated the state law and did not appoint an agent to accept service of process as a condition precedent to doing business within the state? Some courts held that by this unlawful act, the foreign corporation does not waive its privilege of asserting the venue defense. Moss v. Atlantic Coast Line R. Co., 2 Cir., 149 F.2d 701. The result was a curious situation in which a law abiding corporation would waive its venue privilege while a nonconforming corporation was able to assert a venue defense.

Upon revision of the Judicial Code, Congress, in effect adopted the Neirbo decision in Sec. 1391(c). See Ruth v. Eagle-Picher Co., 10 Cir., 225 F.2d 572. Congress achieved the result of the Neirbo decision without reliance upon a concept of waiver or reference to appointment of a statutory agent, by making the focal point of the statute the obtaining of a *license to do business* by the corporation. At the same time the result of those decisions which conferred the venue defense on the non-conforming corporations was removed by providing that venue would be proper if a corporation was "doing business" within the District.

Viewed in this background, the interpretation of "doing business" under Sec. 1391(c) becomes clear since its purpose is to prevent foreign corporations who do not obtain a license and who do business within the state from asserting the privilege of venue.

■ It seems therefore, that a foreign corporation must be "doing business" to such a degree that the state would require that it be licensed before the *venue* requirements of Sec. 1391(c) will be satisfied. However, as pointed out in Remington Rand, Inc., v. Knapp-Monarch, it would be erroneous to make the propriety of venue dependent upon any particular state licensing law or to attempt an examination of all state licensing laws. There the Court stated:

"No attempt will be made to establish criteria which definitely mark the boundary line between proper and improper venue. Congress has decreed state licensing requirements closely approximate the desired balance between the aggrieved plaintiff who might be penalized if the foreign corporation were not required to answer in any vicinity where its activity might cause an alleged injury and the resulting inconvenience to the foreign corporation forced to defend far from home. With this balance as a guiding principle, it can be said the activity must be of such a nature so as to localize the business and make it an operation within the district." 139 F. Supp. 613, 617.

■ In regard to "doing business" in the *jurisdictional* sense, it seems clear to me that it is now generally accepted that in diversity of citizenship cases, the question of whether a corporation is present or "doing business" in the State or Federal District so as to be subject to process and the jurisdiction of the Federal Court is one of substantive law and thus is governed solely by State law and court decisions subject to Federal constitutional limitations. Therefore, if State courts would not regard a particular foreign corporation as "doing business" in the State so as to be subject to their jurisdiction, a Federal District Court sitting in the State and hearing a diversity of citizenship case should likewise rule that the corporation is not "doing business" so as to be subject to its jurisdiction. Riverbank Laboratories v. Hardwood Products Corp., 7 Cir., 220 F.2d 465; Roberts v. Evans Case Co., 7 Cir., 218 F.2d 893; Cincinnati Shoe Mfg. Co. v. Vigorith, 6 Cir., 212 F.2d 583; Robbins v. Benjamin Air Rifle Co., 5 Cir., 209 F.2d 173; Partin v. Michaels Art Bronze Co., 3 Cir., 202 F.2d 541; Canvas Fabricators v. William E. Hooper & Sons Co., 7 Cir., 199 F.2d 485; Pulson v. American Rolling Mill Co., 1 Cir., 170 F.2d 193; Hellriegel v. Sears Roebuck & Co., D.C., 157 F.Supp. 718; Haas ·v.

Fancher Furniture Co., D.C., 156 F.Supp. 564; W. H. Elliot & Sons Co. v. E. & F. King & Co., D.C., 144 F.Supp. 401; Hilmes v. Marlin Firearms, D.C., 136 F. Supp. 307; Kenny v. Alaska Airlines, D. C., 132 F.Supp. 838; Convery v. Clairol Inc., D.C., 123 F.Supp. 29; Allentown Record Co. v. Agrashell, D.C., 101 F. Supp. 790; Perkins v. Louisville & N. R. Co., D.C., 94 F.Supp. 946.

It seems clear that Federal District Courts sitting in diversity cases should interpret "doing business" under Sec. 1391(c) according to Federal law as it is used in the licensing concept while "doing business" for jurisdictional purposes should be decided strictly in accordance with the law of the State wherein the Court is sitting.

A guide for District Courts in making this distinction is found in Remington Rand, Inc., v. Knapp-Monarch Co., which states in regard to "doing business" in the licensing concept that:

"Not only must the activity be of such a nature so as to localize the business and make it an operation within the district but, quantitatively, such activity must be more than the minimum amount of activity needed to meet a constitutional due process objection where a question of amenability of a foreign corporation to service of process is raised. Any reference in federal venue problems to the 'principles of fairness' test (See International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95) employed in amenability to service of process matters, is improper * * *." 139 F.Supp. 613, 618, 619.

It is quite possible therefore that a Federal Court in the interpretation of the phrase "doing business" might find that it has proper jurisdiction over the person of a foreign corporation but that venue is improper.

■ Further complications sometimes arise if State statutes provide for different means to establish the presence of a foreign corporation within the State

for jurisdictional purposes such as where State statutes provide for the submission of a foreign corporation to State jurisdiction under certain circumstances such as "consent" or "minimum contacts" theories. A Federal District Court in a diversity of citizenship case must apply the particular State law in regard to jurisdiction in these cases and thus can gain jurisdiction over the person of a foreign corporation even though the corporation is not "doing business" within the State in any sense. However, once a Federal District Court has found, according to State law, that it has jurisdiction over a foreign corporation, the question may then arise as to whether such manner of gaining jurisdiction violates the due process clause or the interstate commerce clause of the Federal Constitution. Const. art. 1, § 8, cl. 3; Amend. 14. This, of course, is a Federal question and State authorities are not controlling. But, it is a question which is not reached for decision until it is found that the State statute is broad enough to assert jurisdiction over the defendant in a particular situation. Pulson v. American Rolling Mill Co., 1 Cir., 170 F.2d 193. Assuming that the manner of gaining jurisdiction over a foreign corporation is not unconstitutional and that the corporation is not "doing business" in the particular State under the venue section, Title 28 U.S.C.A. § 1391(c), then the corporation would have the privilege of having the case dismissed or transferred by virtue of Title 28 U.S.C.A. § 1406, for improper venue.

In Illinois, the situation becomes involved because of the Illinois Civil Practice Act, Section 17 (Ill.Rev.Stat.1957, Ch. 110, § 17) which, insofar as material here provides:

"(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any said acts:

"(a) The transaction of any business within the State;

"(b) The commission of a tortious act within this State;

"(c) The ownership, use, or possession of any real estate situated in this State;

"(d) Contracting to insure any person, property or risk located within this State at the time of contracting."

This statute should be viewed in light of the criteria laid down by the United States Supreme Court in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154 which looked to the "contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there". At page 316 of 326 U.S., at page 158 of 66 S.Ct. it was stated that "due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."

The court further held that "to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue."

 This test of "minimum contacts with (the state) such that the suit does not offend traditional notions of fair play and substantial justice" goes beyond the "consent", "doing business", and

"presence" tests as standards for measuring the extent of state judicial power over foreign corporations. In reaffirming this test, the United States Supreme Court recently said:

"Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more States and may involve parties separated by the full continent. With this increasing nationalization of commerce has come a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 201, 2 L.Ed.2d 223.

It is clear that Section 17 of the Illinois Civil Practice Act is intended to assert jurisdiction of the State of Illinois over nonresident defendants to the fullest extent possible under the Due Process Clause of the Fourteenth Amendment and Article 2, § 2 of the Illinois Constitution, S.H.A., and to implement the "minimum contact" theory of jurisdiction enunciated by the Supreme Court. The Illinois Supreme Court has recently reviewed the constitutional foundations for the section and held it valid under the Federal and State Constitutions. Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673. See also Orton v. Woods Oil & Gas Co., 7 Cir., 249 F.2d 198; Hellriegel v. Sears Roebuck & Co., D.C., 157 F.Supp 718 and Haas v. Fancher Furniture Co., D. C., 156 F.Supp. 564. Similar statutes in Maryland and Vermont have both withstood constitutional objections. Smyth v. Twin State Improvement Corp., 116 Vt. 569, 80 A.2d 664, 25 A.L.R.2d 1193;

Johns v. Bay State Abrasive Products Co., D.C., 89 F.Supp. 654.

In the recent case, Orton v. Woods Oil & Gas Co., 249 F.2d 198, 200, our Court of Appeals for the Seventh Circuit in considering Sec. 17(1) (a) held that the question of whether a foreign corporation was engaged in "the transaction of any business within this State" was coterminous with the Due Process Clause of the Fourteenth Amendment. Therefore under Section 17(1) (a), a foreign corporation would have to have such "minimum contacts" with the territory of the forum that the maintenance of an in personam suit does not "offend traditional notions of fair play and substantial justice."

Thus it can be seen that a Federal District Court sitting in Illinois may have jurisdiction over a foreign corporation by virtue of Section 17 and yet the venue may be improper under Title 28 U.S.C.A. § 1391(c) because the corporation was not "doing business" within the judicial district as determined by federal law in its usage in the licensing concept. In a case of this nature, the defendant must assert the improper venue at the earliest practicable moment since it is only a personal privilege which can be waived or lost by failure to assert it seasonably or by formal submission in a cause or submission by conduct. Graver Tank & Manufacturing Corp. v. New England Terminal Co., 1 Cir., 125 F.2d 71. It is possible under certain circumstances that the court on its own motion may raise improper venue and dismiss or transfer the case. Ellenwood v. Marietta Chair Co., 158 U.S. 105, 15 S.Ct. 771, 39 L.Ed. 913; Cyclopedia of Federal Procedure Sec. 15, 484.

The defendant, Turner Aviation Corporation, has made a motion to dismiss the complaint or quash return of summons upon the grounds that it was not "doing business" within this judicial district so as to be "present" for *jurisdictional* purposes. Both the defendant and plaintiff maintain that the question of "doing business" should be resolved ac-

cording to federal law. This contention is clearly wrong. The "presence" of a foreign corporation within a judicial district for jurisdictional purposes is as we have seen a matter of substantive law and must be decided solely according to state law. Therefore, the question of whether or not this court has jurisdiction over the defendant, Turner Aviation Corporation must be decided according to Illinois law and more particularly Section 17 of the Illinois Civil Practice Act (Ill.Stat., 1957, Ch. 110, § 17).

Since the plane crash occurred at or near Grant Park, Illinois, and since ultimate liability in tort is not a jurisdictional fact, Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673, it is clear that this court has *jurisdiction* over the person of the defendant by virtue of Sec. 17(1) (b) which provides for the submission to the jurisdiction of the courts of Illinois by the "commission of a tortious act within this State." Whether this court would also have jurisdiction over the person of the defendant by virtue of Section 17(1) (a) is questionable since the Act by its express terms states that the cause of action must arise from "the transaction of any business within this State." Further, in light of Orton v. Woods Oil & Gas Co., it might be difficult to maintain that the defendant's occasional, sporadic and irregular flights into Illinois amounted to such "minimum contacts" with the territory of the forum so that the maintenance of a suit in personam would not "offend traditional notions of fair play and substantial justice." To do so might expand the Illinois concept of State jurisdiction over non-residents beyond the limit imposed by due process.

However, since this Court clearly has jurisdiction over the person of the defendant by virtue of Section 17(1) (b) and since the constitutionality of the Act has been accepted, only the question of venue remains. Had it been urged upon this Court that venue was improper because the defendant was not "doing business" under Sec. 1391(c) within this Judicial District, there may have been grounds to dismiss the complaint or transfer the case to a proper venue as provided in Sec. 1406(a). See Remington Rand, Inc. v. Knapp-Monarch Co., supra. But here the defendant made his motion to dismiss or quash return of summons on the basis of lack of jurisdiction making no mention whatever of improper venue. By proceeding directly to the vital issue of jurisdiction without raising the question of improper venue, I hold that the defendant has waived its privilege of venue by not interposing a "timely and sufficient objection to the venue." Sec. 1406(b). Graver Tank & Manufacturing Co., v. New England Terminal Co., supra.

Accordingly, the motion of the defendant, Turner Aviation Corporation, to dismiss the complaint or to quash return of summons, is hereby denied.