**594**

**UNITED STATES of America,**
**Plaintiff,**

**v.**

**MINNESOTA MINING AND MANUFAC-**
**TURING COMPANY, Defendant.**

**Crim. A. No. 61–73–D.**

United States District Court
E. D. Illinois.

Jan. 5, 1966.

Carl W. Feickert, U. S. Atty., East St. Louis, Ill., John E. Sarbaugh, Chief, Midwest Office, Antitrust Division Dept. of Justice, Chicago, Ill., for United States.

John T. Chadwell and Glenn W. McGee, Chadwell, Keck, Kayser, Ruggles & McLaren, Chicago, Ill., Robert Z. Hickman, Danville, Ill., William H. Abbott and William Hunt, Richard L. Post and John L. Connolly, St. Paul, Minn., for Minnesota Mining & Mfg. Co.

JUERGENS, Chief Judge.

This matter is before the Court upon the propriety of accepting a plea of NOLO CONTENDERE on behalf of the defendant, Minnesota Mining and Manufacturing Company.

The Court has never looked with favor upon such pleas. At a hearing on October 20, 1965, the government stated it did not oppose the acceptance of such a plea.

The primary question in the acceptance of a nolo contendere plea is whether or not under all the circumstances it is justified and whether or not the public interest will be better served by the acceptance of such a plea.

Frankly speaking, it is very difficult for this Court to justify the acceptance of a nolo plea in any criminal case. The defendant or defendants are either guilty or they are not guilty.

I think we may compare a nolo contendere plea in a criminal case to the

"confession and avoidance" plea in a civil case under the old common law pleadings.

I am assuming since the government does not oppose the acceptance of the plea, and in fact agrees that the Court should accept such a plea, that its position is that there is justification for the acceptance of such a plea and that there is no harm to the public. But, on the other hand, we might conjecture that there will be a tremendous advantage to the defendant by the Court accepting its nolo contendere plea.

In view of the statements of counsel for the government made both orally and in written briefs and in view of the interpretation that the Court places on the government's position in not opposing such a plea that no public harm would ensue in accepting the nolo contendere plea and in spite of this Court's disfavor of such a plea, I did accept the plea of nolo contendere of this defendant. The record so shows.

Each party to this cause submitted material relating to sentencing ex parte in camera on December 3, 1965, for this Court to consider in imposing a penalty on this defendant for violating the Sherman Anti-Trust laws of the United States.

 For all purposes so far as penalties are concerned, a plea of nolo contendere is in effect a plea of guilty before this Court. The fact that the Court has agreed to accept a nolo contendere plea does not mean that the defendant can expect to receive any less or any more consideration than it would have received had the plea been that of guilty. For all intents and purposes the defendant stands before this Court convicted by its own plea.

The grand jury for the Eastern District of Illinois returned a nine count indictment. The defendant has plead nolo contendere to Counts 1, 2, 3, 4 and 7 and thereby recognizes that by tendering pleas of nolo contendere to the foregoing counts of the indictment, it is *admitting its guilt* to those counts for purposes of this criminal case. I have been informed that the government will dismiss Counts 5, 6, 8 and 9.

The grand jury returned an indictment containing many similar charges with respect to each of the three industries which 3M undertook to dominate, namely, (1) pressure sensitive tape, (2) magnetic recording media and (3) aluminum presensitized lithographic plates, by employing or attempting to employ in each of them a system of coercing competitors into accepting highly restrictive license agreements.

*With regard to the tape industry—* Count 1 charges an attempt to monopolize; Count 2, conspiracy to restrain trade; and Count 3, conspiracy to monopolize.

*With regard to the magnetic recording media* (concerning which this Court has some knowledge, having heard Armour Research Foundation of Illinois Institute of Technology v. C. K. Williams & Co., 170 F.Supp. 871)—Count 4 charges an attempt to monopolize.

*With regard to the lithographic plates* —Count 7 charges an attempt to monopolize.

Defendant states that all of the charges in the five counts to which it pleaded nolo contendere are repetitious. The charges of necessity would have to be repetitious if the defendant was repetitious in violating the law. One of the basic charges in each of the three separate industries is "attempt to monopolize" such industry (they being Counts 1, 4 and 7). Each such industry is an important factor of our economy. It is not reasonable that the three attempt counts should be considered but one count. There were three attempts to monopolize the business of three basic industries in our economy and they will be dealt with as such.

Counts 2 and 3 allege variations of the attempts to take over the pressure sensitive tape industry. Since Counts 2 and 3 are variations of Count 1, they will be dealt with as such.

Defendant says that 3M has never before been indicted or otherwise charged

criminally with any violations of the anti-trust laws in any of its multitudinous product lines. Normally, when companies are formed and while they are in their infancy, they usually do not become overbearing. It is only after they have attained status that they sometimes lose their sense of equilibrium and attempt to get rid of the little fellow with a number of squeeze plays. Defendant's course of conduct of which complaint is made began in the early 30's. It gained momentum and seems to have continued to approximately the date of the indictment. By its plea the defendant admits that there was one continuous act of law violation beginning in the early 30's. What difference does it make if there are several law violations within those years or if there is a continuous one extending over several decades. There is no difference. The books are replete with cases filed wherein 3M is party plaintiff. If it did not get its way, it immediately filed suit—sometimes several suits against the same defendant. 3M's position seems to have been one of rule or ruin. If there was a business that was interfering with 3M's operations, meetings were set up and if 3M could not get its way through persuasion, then threats, coercion and intimidation were used. If these were to no avail, a suit would be filed and in some instances the defendant would capitulate. This meant that the defendant either became subservient to 3M or else quit business. In other instances the threats to the customers, salesmen, distributors, etc. of a marked company would so frighten them that they would cease handling or selling the product to the detriment, injury and damage of such marked company.

It is the opinion of this Court that the activities of 3M should be watched by the Justice Department for some time to come relative its trade practices.

We hope there was no arrangement or agreement between the government and 3M in this case which caused it to take the turn that it did after the indictment was returned.

This Court in Armour Research Foundation of Illinois Institute of Technology v. C. K. Williams & Co., 170 F.Supp. 871, 887, said:

"The Court has examined the record and all other evidence presented during the course of the extended trial, concerning the alleged violation of the Anti-Trust Laws of the United States by and between the plaintiffs, and determines that the charges of Anti-Trust violation have not been substantiated. However, the fisherman was at the water's edge, had made his cast, but no fish took the bait."

It isn't difficult to read between the lines of that decision and determine the Court's feelings relative possible anti-trust violations irrespective of the final holding.

Able and competent counsel for both sides have presented to this Court their respective Pre-Sentence Memoranda couched in terms most suitable to their side of the case. After all of the statements are considered and digested and stripped of their unilateral interpretations the bare and basic fact remains that the defendant violated the Sherman Act and that such violation continued throughout a term of years.

The defendant has advanced a number of theories as to why this Court should be lenient even after admitting that the violation of law continued over a number of years.

Congress in its wisdom saw fit to amend the Sherman Anti-Trust Act in 1955 by increasing the criminal penalties from $5,000 to $50,000 and to permit the courts in their discretion to impose a penalty up to the maximum.

■ This Court is not bound by any of the recommendations or suggestions made by either party as to what the penalty should be. But they are helpful in that it gives to the Court the ideas of the parties who have lived with this case for many years, know most of the facts and have given to this Court their consider-

ate opinion as to what the penalty should be, based upon such facts.

It is, therefore, the judgment of this Court that the defendant, Minnesota Mining and Manufacturing Company, be and it is hereby fined the sum of Fifty Thousand Dollars ($50,000) on each of Counts 1, 4 and 7 and that it be and it is hereby fined the sum of Twenty Thousand Dollars ($20,000) on each of Counts 2 and 3, or in the aggregate the sum of One Hundred Ninety Thousand Dollars ($190,000) and costs, payable forthwith.