**POLYCHROME CORPORATION,**
Plaintiff,

v.

**MINNESOTA MINING AND MANUFAC-TURING COMPANY, Defendant.**

**No. 66 Civ. 979.**

United States District Court
S. D. New York.
Oct. 11, 1966.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for plaintiff; Edward N. Costikyan, Thomas R. Farrell, Jr., Leonard M. Marks, New York City, of counsel.

Townley, Updike, Carter & Rodgers, New York City, Chadwell, Keck, Kayser, Ruggles & McLaren, Chicago, Ill., William H. Abbott, Gen. Counsel, Minnesota Min. & Mfg. Co., Carpenter, Kinney & Coulter, St. Paul, Minn., for defendant; John R. Schoemer, Jr., New York City, John T. Chadwell, Glenn W. McGee, Chicago, Ill., Harold J. Kinney, St. Paul, Minn., of counsel.

WYATT, District Judge.

This is a motion by defendant ("3M") to transfer the action to the United States District Court for the Northern District of Illinois (Chicago) for "the convenience of parties and witnesses, in the interest of justice". 28 U.S.C. § 1404(a).

The amended complaint contains four separate claims. The first three (the "antitrust claims") charge violations of the Sherman Act (15 U.S.C. § 1 and following) in that 3M has attempted to restrain and monopolize interstate trade or commerce and has conspired with others so to do by various means, including suits or threats of suit for patent infringement, unfair and illegal license agreements and contracts, price fixing, and other unfair and coercive practices. Treble damages and injunctive relief are

prayed for under these three claims. 15 U.S.C. §§ 15, 26.

■ This Court has jurisdiction over the antitrust claims (15 U.S.C. § 15) and venue is proper here on those claims because 3M is "found" here and "transacts business" here (15 U.S.C. § 22).

The fourth claim (the "patent claim") is for a declaratory judgment (28 U.S.C. § 2201) "as to whether * * * plaintiff's manufacture, use and sale of aluminum presensitized lithographic plates in accordance with the teachings of its patents infringes Defendant's Patent". A declaration of non-infringement is prayed for.

■ This Court has jurisdiction over the patent claim (28 U.S.C. § 1338) and venue is proper here on that claim because 3M is "licensed to do business" and "is doing business" in this district (28 U.S.C. § 1391(c)).

Plaintiff ("Polychrome") is a New York corporation which makes and sells, among other things, aluminum presensitized lithographic plates ("plates") used in offset lithography, a printing process often called "offset printing". Polychrome has its principal place of business in New York.

3M is a Delaware corporation with its principal place of business in Minnesota. It also makes and sells plates, among many other things.

3M and Polychrome are thus competitors in the plate business.

United States Letters Patent No. 2,714,066 issued to 3M in 1955 as assignee of the two inventors, Clifford Jewett and John Case, employees of 3M. This patent is referred to herein as the "Jewett patent". It covered a "planographic printing plate".

A prior history of litigation between, or affecting, these parties needs to be noted before considering present contentions.

3M commenced an action on July 27, 1955, against A. B. Dick Company in the Northern District of Illinois (Chicago). This action charged infringement of the Jewett patent. Under a settlement by the parties, a judgment was entered on consent on April 14, 1958 that the Jewett patent was valid and infringed.

On August 1, 1958, 3M commenced an action against Polychrome in the Northern District of Illinois for infringement of the Jewett patent.

On August 6, 1958, 3M commenced an action for infringement of the Jewett patent in the Northern District of Ohio against Carpenter Printing Company, Inc., a user of Polychrome plates.

On August 7, 1958, 3M commenced an action in the District of Kansas against Bewal, Inc., a distributor of Polychrome plates. This action was for infringement of the Jewett patent.

In the action at Chicago, Polychrome pleaded as an affirmative defense that 3M had used the Jewett patent to obtain an unlawful monopoly, had made threats, had brought the mentioned suits against a distributor and a customer of Polychrome, etc., and thus had unclean hands.

Polychrome underwrote the defense in the action in Kansas. The District Court in Kansas on October 28, 1958, denied a motion by Bewal to enjoin prosecution of the action until decision in the action at Chicago against Polychrome.

Polychrome then asked the District Court at Chicago for a preliminary injunction restraining 3M from prosecuting the actions in Kansas and Ohio. This motion was denied by Judge Sullivan on December 22, 1958. The Court of Appeals affirmed with opinion on June 11, 1959 (7 Cir., 267 F.2d 772).

On April 27, 1960, the District Court in Kansas (Judge Ritter from the District of Utah, sitting by designation) decided the action there in favor of 3M. It was held that the Jewett patent was valid and infringed by the Polychrome plates, and that 3M had not been guilty of misuse of the patent or other inequitable conduct (Minnesota Mining and Manufacturing Co. v. Bewal, Inc., 183 F.Supp. 794).

On July 26, 1960, United States Letters Patent No. 2,946,683 were issued to cover a plate treated with zirconium hexahalide. This patent was assigned to Polychrome and is hereafter referred to as the "Polychrome patent".

The decision in Kansas in favor of 3M was affirmed by the Court of Appeals on June 7, 1961 (10 Cir., 292 F.2d 159).

3M then moved for summary judgment in the action at Chicago against Polychrome. The motion was granted on December 8, 1961 by Judge Parsons on the ground that the decision in Kansas was res adjudicata between 3M and Polychrome, the latter having participated in the defense in Kansas (133 USPQ 499).

On December 13, 1961, an indictment was returned against 3M by a grand jury impaneled by the United States District Court for the Eastern District of Illinois, sitting at Danville. It is said for 3M on this motion that the antitrust claims of Polychrome in the case at bar are "substantially identical" to charges made in three paragraphs (7, 8 and 9) of the indictment.

Polychrome appealed from the judgment granted by Judge Parsons but an agreement of settlement was made by 3M and Polychrome on April 18, 1962 under which, among other things, the litigation was terminated by the entry of judgment that the Jewett patent was valid and had been infringed by Polychrome. Thereafter in June 1962, Polychrome was granted a license under the Jewett patent.

There were long sustained efforts by 3M to transfer the indictment proceeding to the District of Minnesota and these resulted in a number of opinions, highly interesting to students of the transfer problem (Platt v. Minnesota Mining and Manufacturing Co., 376 U.S. 240, 84 S.Ct. 769, 11 L.Ed.2d 674; 7 Cir., 345 F.2d 681; 7 Cir., 314 F.2d 369).

On January 5, 1966, sentence was imposed on 3M after acceptance by the District Court at Danville of a plea of nolo contendere to five of the nine counts of the indictments. In imposing sentence Chief Judge Juergens delivered an opinion (United States v. Minnesota Mining and Manufacturing Co., D.C., 249 F. Supp. 594). It appeared that the government did not oppose acceptance of the nolo plea.

The case at bar was commenced by Polychrome on April 5, 1966.

Two days later, on April 7, the government began a civil action against 3M in the Northern District of Illinois; this action is referred to herein as the "civil suit". The complaint has three counts, each charging violations by 3M of the Sherman Act. Counts one and two charge offenses respecting trade in "pressure sensitive tape" (count one) and "magnetic recording media" (count two). These two products are not involved in the case at bar. Count three of the civil suit charges offenses respecting trade in plates and is assumed to include the claims made in the case at bar. The government asks for broad relief by way of injunction.

An amended complaint was filed by Polychrome on May 17, 1966. It is suggested for 3M that the amendment was to make the complaint in the case at bar more nearly like count three of the complaint in the civil suit.

█ The chief factor urged for transfer is the pendency at Chicago of the civil suit, which has many of the same questions of law and fact as are in the case at bar. It is said that trials of related cases should be in a single district, avoiding unnecessary duplication and the possibility of undesirable conflicts between districts. The likelihood of joint pretrial proceedings in the civil suit and the case at bar is suggested, in the event of a transfer.

The argument has substance but I cannot accept it as controlling.

The civil suit covers a broader area than the case at bar, dealing with two products in which Polychrome has no interest. The case at bar has a declaratory judgment claim, asking for a judgment that making plates in accordance with the Polychrome patent does not infringe the Jewett patent. This last

controversy, represented to be substantial, does not figure in the civil suit. The differences between the civil suit and the case at bar appear to have been recognized by government counsel in the civil suit, who exhibits an intention, in the event of transfer, to oppose any consolidation of the two cases for discovery or for any other purpose. Of course, it is unlikely that there would ever be any consolidation of the two cases for trial, if the case at bar be transferred.

The decisions cited for 3M on the importance of the civil suit on this motion to transfer appear to be based on facts so different as to dilute their authority here. In one case (Hawkins v. General Controls Corp., 225 F.Supp. 971 (S.D. N.Y.1964)) plaintiff was the moving party; in another (Continental Grain Co. v. Barge FBL–585, 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960)), there were two suits between the same parties with precisely the same issues; in another (Rodgers v. Northwest Airlines, Inc., 202 F.Supp. 309 (S.D.N.Y.1962)), twenty actions arising out of the same accident were already assigned to one judge in the transferee court; in another (Axe-Houghton Fund A, Inc. v. Atlantic Research Corp., 227 F.Supp. 521 (S.D.N.Y. 1964)), three similar actions and the one sought to be transferred "probably" would be assigned to the same judge in the transferee court.

As to the "convenience of parties", it is shown that six officers or employees of 3M, all residing in St. Paul, will be required for all or a substantial part of the trial, estimated to take about six weeks; that the travel time by air to New York is from 80 to 105 minutes longer than to Chicago; that plane service is more frequent to Chicago from St. Paul; that 3M has offices in Chicago more convenient to the Courthouse there than its offices are convenient to our Courthouse; and that trial counsel for 3M have their offices in Chicago.

On the other hand, it is shown that eleven officers or employees of Polychrome residing in New York will be required as witnesses, and that two such residing in Pennsylvania, one residing in Georgia, one residing in Texas, and one residing in Connecticut will similarly be required as witnesses. It is also shown that Polychrome has a store in Chicago with ten employees but it is represented that no office space would be available there for use of Polychrome officers and employees testifying at a trial. Trial counsel for Polychrome have their offices in New York.

It is shown for 3M that extensive files from St. Paul will be required for the civil suit at Chicago and many of the same files will be required for the case at bar. It is also shown that many documents produced at Danville by 3M, Polychrome, A. B. Dick Company and perhaps others are now in the government's possession at Chicago.

As to the St. Paul files, it cannot be assumed that they will be required at the same time in Chicago and here. 3M will certainly be protected against the two trials being held at the same time, and as to pre-trial proceedings 3M can in any event ask for protection under Fed.R.Civ.P. 30(b), 34 and perhaps others. As to the files transferred to Chicago from Danville, they are available for inspection at Chicago before the trial of the case at bar to the same extent whether the case at bar be transferred or not. As for use at the trial of the case at bar, it is to be doubted that the government can keep indefinitely files belonging to 3M, Polychrome and others against the demands of the owners of the files for their possession. If the government be held entitled to keep the Danville files and if the government refuses to permit their use at trial of the case at bar, their production in Chicago can be compelled by deposition procedure (Fed.R.Civ.P. 30, 45(b)) so as to make them ultimately usable at a trial here.

The records of Polychrome are all located in New York; of course they could be taken to Chicago but it would be inconvenient to Polychrome to do so.

■ As to the "convenience of * * * witnesses" other than those employed by the parties, nothing is shown which would affect the situation here. Polychrome makes no showing as to such witnesses. 3M says that it is "probable" that persons who testified before the Danville grand jury "will have information relevant both to the government's civil suit and to the Polychrome suit" (the case at bar). It is said that there are 24 persons in this category and that Chicago is more convenient for 18 of them. The difficulty is that they are not named, nor their expected testimony indicated, nor even that 3M will call them. Accordingly, no weight can be given this factor.

■ The factors of case load and time required to reach trial, as between this district and the proposed transferee district are to be considered. There are 24 judgeships in this Court and 11 in the Northern District of Illinois (28 U.S.C. § 133) but there may be places unfilled at any given time. At June 30, 1966, there were 10,539 civil actions pending in this Court and 2,140 in the Northern District of Illinois. The median time interval from issue to trial for civil cases in which a trial was completed in the year ending June 30, 1966 was as follows:

Southern District of New York
    non-jury    34 months
    jury    40
    all civil cases    39

Northern District of Illinois
    non-jury    13 months
    jury    17
    all civil cases    15

The cited statistics are from Annual Report of the Director, Administrative Office of the United States Courts, Fiscal Year Ending June 30, 1966.

Consideration has also been given to the point earnestly made for 3M that "Polychrome has already in the Northern District of Illinois presented essentially the same issues as those it raises in the present complaint" and that the "effect upon its present claims of the earlier rulings adverse to Polychrome, as well as of the settlement of the prior litigation between the parties are matters which, in all deference, can best be decided by the court which made the earlier adjudications against Polychrome * * *" (Memo for 3M, pp. 10, 11). I can give very little weight to this argument. The case at bar contains the patent claim, represented to be important, which has never been before any court. Nor did the court at Chicago do more than, on a motion for summary judgment, to conclude that the claims then made by Polychrome were foreclosed by the decision on the merits in Kansas.

What it comes down to is that it is more convenient for 3M to defend the action in Chicago and it is more convenient for Polychrome to prosecute the action here.

■■ Balancing the various factors it does not seem to me that 3M has made out the required "strong case for a transfer".

"* * * a defendant has the burden of making out a strong case for a transfer and * * * the plaintiff's privilege, conferred by statute, of choosing the forum he selected is a factor to be considered as against the 'convenience' of the witnesses or what otherwise might be the balance of 'convenience' as between 'the parties.'" Ford Motor Co. v. Ryan, 182 F.2d 329, 330 (2d Cir.), cert. denied, 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624 (1950).

It has recently been said that the choice of venue "is still entitled to substantial consideration". A. Olinick & Sons v. Dempster Bros., Inc., 365 F.2d 439 (2d Cir. No. 30,296, August 8, 1966).

It has also been stated (Peyser v. General Motors Corp., 158 F.Supp. 526, 529; S.D.N.Y.1958):

"Plaintiffs' right to choose the forum is still a relevant consideration, so that where the interests are evenly balanced transfer should be denied. Nor are judges required to draw hair lines to determine where the equities preponderate in a situation where they

are nearly in balance. The moving party must make a clear-cut showing that when all the interests are considered, trial would more conveniently proceed and the interests of justice would be better served in the other district."

This decision and language has recently been Cited with approval by our Court of Appeals which declared that "choice of forum" by plaintiff "is a factor to be accorded substantial weight." Golconda Mining Corp. v. Herlands, 365 F.2d 856 (2d Cir. No. 30,221, August 8, 1966).

The motion to transfer is denied.

So ordered.