**CARTER-WALLACE, INC., Plaintiff,**

v.

**EVER-DRY CORPORATION, Defendant.**

**No. 67 Civ. 4170.**

United States District Court
S. D. New York.
Aug. 8, 1968.

von Maltitz, Derenberg, Kunin & Janssen, New York City, for plaintiff.

Shenier & O'Connor, New York City, for defendant.

MANSFIELD, District Judge.

In this action for a declaratory judgment to ascertain whether plaintiff, Carter-Wallace, Inc., by its use of the words "Extra Dry" on its "Arrid" personal deodorant products, has unfairly competed with defendant, Ever-Dry Corporation, a manufacturer of similar products, which has challenged such use in a trademark infringement suit against plaintiff in the Western District of Tennessee, both parties have made motions that raise

questions of venue and jurisdiction, with the result that this Court is faced with the all-too-familiar question, frequently encountered in forum-shopping contests, of whether this district or the Western District of Tennessee is the forum in which the issues should be adjudicated. If that question could be resolved solely on the basis of the heavy backlog of complicated and protracted civil and criminal cases pending in this district, which have taxed the capacities of the most arduous judges and recently led to a designation for two months of judges from other federal districts (including Tennessee), this Court would have no hesitancy in taking whatever steps might be necessary to have the case adjudicated in some other less burdened federal district (if such can be found today). However, application of well-established principles forces us to deny defendant's motions and to grant plaintiff's motion for a stay.

Ever-Dry, a Tennessee corporation having its principal place of business in that state, has moved to dismiss this action pursuant to Rule 12(b) on the grounds: (1) that venue is improper in this district; (2) that this Court lacks personal jurisdiction over the defendant; and (3) that service of process on the defendant was improper. In the alternative, Ever-Dry seeks to have the action transferred to the Western District of Tennessee where its action against Carter-Wallace is pending.

Carter-Wallace, a Maryland corporation having its principal place of business in New York City, has moved to stay proceedings in the action in the Western District of Tennessee.

Litigation as to the use of "Extra Dry" commenced on October 27, 1967, when Carter-Wallace filed its declaratory judgment complaint which was served by a Tennessee attorney upon a corporate officer of Ever-Dry in Tennessee on October 30, 1967, alleging that its trademark "Arrid" containing the subsidiary wording "Extra Dry" on deodorant and anti-perspirant products did not unfairly compete with Ever-Dry's "Ever-Dry"

and "Extra-Dry" marks on similar products. Service was made in Tennessee on the theory that personal jurisdiction over Ever-Dry could thereby be obtained pursuant to Rule 4(e), F.R.C.P., and §§ 301, 302 and 313, N.Y.C.P.L.R. Section 301 provides that if a foreign corporation is "doing business" in New York, it may be served with process outside of the state; and Section 302 authorizes acquisition of personal jurisdiction by out-of-state service upon a non-resident in a suit arising out of its transaction of business in New York.

■■ Thus a threshold and primary issue is whether Ever-Dry is "doing business" in New York. If it is so engaged, according to settled principles of state law out-of-state service of process would be permitted, Public Administrator v. Royal Bank of Canada, 19 N.Y.2d 127, 130, 278 N.Y.S.2d 378, 224 N.E.2d 877 (1967), and this Court would thereby acquire jurisdiction, Arrowsmith v. United Press Int'l, 320 F.2d 219 (2d Cir. 1963); Rule 4(e), F.R.Civ.P. At the same time a determination that this Court has jurisdiction over Ever-Dry would result in a finding that venue lies here, since the test for corporate residence within the district, as required by Title 28 U.S.C. § 1391(a), (b), is the same as the jurisdictional standard, i. e., whether the defendant is "doing business" within the district, Sweetheart Plastics, Inc. v. Illinois Tool Works, Inc., 267 F.Supp. 938, 940–941 (S.D.N.Y.1967); 1 Moore, Federal Practice ¶ 0.142[5.–3], pp. 1499–1501.

At the outset it is recognized that Ever-Dry, a Tennessee corporation with its principal office in Memphis, does not maintain any offices, showrooms, warehouses, inventory, or similar property in this district; and that it does not have any bank account or telephone listing here and does not pay taxes here. On the other hand, as a company engaged in nationwide sale of its products, it has developed a substantial and steadily increasing volume of business here over the last 20 years, with the result that it now sells its products to approximately

80 customers, including many of the largest department stores in the district, and to about 220 accounts throughout the state. Furthermore, and apart from such sales, it has engaged in various other business activities in this district, some of them of such importance as to require the frequent presence of its top officers here.

Turning first to Ever-Dry's sales activities, it has developed its increasing business in this district primarily by maintaining, since 1948, two sales representatives, both of whom presently reside in New Jersey and Massachusetts, on a commission basis in this district. They solicit orders from customers here, which are forwarded to the Memphis office. In no case has such an order ever been rejected. Upon acceptance of the order, the company ships the products into the state to the customer here. In addition to sales solicitation, the representatives have distributed promotional materials and price lists in New York on behalf of Ever-Dry; have negotiated on its behalf the collection of delinquent accounts; have authorized customers' return of over-stocked or defective merchandise, without prior clearance with Ever-Dry; and have investigated here, for Ever-Dry, the possible acquisition of other companies engaged in the cosmetics business and have alerted Ever-Dry to acquisition prospects here, with one of whom the sales representative conducted negotiations for Ever-Dry.

The sales representatives are provided by Ever-Dry with a list of retail and wholesale customers whom they are to call upon, and although they are free to determine when to make specific calls, these are made on a regular and continuing basis.

Ever-Dry supports its representatives' efforts with a variety of other business activities within this district, which are designed to increase its overall business here, some of them implemented by the representatives themselves. Since 1961, for instance, it has "cooperatively" advertised its products by paying for the cost of newspaper ads that ran here in the name of its customers here. In addition, from 1961 through 1964, it has advertised its products via one minute spot radio commercials in New York. Moreover, since 1948 the sales representatives have entered into so-called "push money" arrangements whereby Ever-Dry would compensate the sales personnel of its retail accounts for selling its merchandise. Ever-Dry's sales representatives have also assisted in coordinating these other sales "back-up" activities with their own efforts, such as by participating in meetings with its New York-based advertising agency, involving such matters as preparation of advertising copy; collecting market information in this district with respect to current, proposed, experimental and competitors' products; receiving and checking inventory with customers here; and negotiating for a possible display room in New York City.

Since 1965, Ever-Dry has retained an advertising agency within New York and paid it approximately $40,000. Moreover, in 1967, as part of a national survey, a market research study was conducted in New York State to test consumer reaction to Ever-Dry's proposed deodorant advertising themes. Of those interviewed throughout the United States, 10% were interviewed in New York State. For the years between 1963 and 1967, Ever-Dry's sales within New York State have been approximately $60,000.

Among its other contacts with this district are three annual sales meetings that were held in New York City and presided over by Ever-Dry's President, Richard Brown; the annual distribution of deodorant samples through its sales representatives; and Ever-Dry's correspondence with New York consumers, including replies to testimonials, complaints, questions as to where Ever-Dry could be purchased, and requests for samples.

■ Much has been written over the years in a plethora of decisions on the subject of what constitutes "doing business" for different purposes (e. g., im-

position of state taxes; capacity to sue; personal service; diversity jurisdiction; venue, etc.). Whatever criteria are used, state or federal, however, on the basis of all of the facts in this case the Court must conclude that Carter-Wallace has sustained its burden, Thomson v. Gaskill, 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951 (1942), of showing that Ever-Dry is so systematically, regularly, and continuously doing business within New York as to compel the finding of its presence here. N.Y.C.P.L.R. § 301; Frummer v. Hilton Hotels Int'l, Inc., 19 N.Y.2d 533, 281 N.Y.S.2d 41, 43 (1967). Here we have a situation in which the sales representatives acting on Ever-Dry's behalf have provided services beyond "mere solicitation," see Miller v. Surf. Prop. Inc., 4 N.Y.2d 475, 480, 176 N.Y.S.2d 318, 320, 151 N.E.2d 874, 876 (1958). Their collection activities, negotiation of returns, distribution of samples, and investigation of possible acquisitions are "sufficiently important to [Ever-Dry] that if it did not have [these representatives] to perform them, the corporation's own officials would undertake to perform substantially similar services." Gelfand v. Tanner Motor Tours, Ltd., 385 F.2d 116, 121 (2d Cir. 1967); see Bryant v. Finnish National Airlines, 15 N.Y.2d 426, 260 N.Y.S.2d 625, 208 N.E.2d 439 (1965).

Having concluded that Ever-Dry is amenable to service of process in this diversity case under principles of state law, Arrowsmith v. United Press Int'l, 320 F.2d 219 (2d Cir. 1963), we necessarily have determined that venue is proper, since, as already noted, the test for determining whether a corporate defendant "resides" within the district, 28 U.S.C.A. § 1391(a),[1] depends upon whether it is "doing business" within the district, 28 U.S.C.A. § 1391(c), and for this purpose, if the jurisdictional standard is satisfied, so is the venue standard. Sweetheart Plastics, Inc. v. Illinois Tool Works, Inc., 267 F.Supp. 938, 940–941

(S.D.N.Y.1967); 1 Moore, Federal Practice ¶ 0.142[5.–3] at 1499–1501. Moreover, since Ever-Dry was amenable to service under N.Y.C.P.L.R. § 301, out-of-state service by a Tennessee attorney upon an Ever-Dry corporate officer was proper under N.Y.C.P.L.R. § 313, and Rules 4(e), (f), F.R.C.P.

Since Ever-Dry's business activities here require a holding that personal jurisdiction and venue exist, it is unnecessary to dwell upon Carter-Wallace's alternative contention that the same conclusion is dictated on the ground that the "claim arose" in this district. Section 302(a), N.Y.C.P.L.R., provides that personal jurisdiction over a non-resident may be acquired by out-of-state service of process in a suit arising out of the non-resident's transaction of business in New York; and Title 28 U.S.C. § 1391 (a) and (b) permit venue in a judicial district where the "claim arose".

■ Regardless whether the instant suit is deemed to invoke jurisdiction over the subject matter based on diversity of citizenship or a federal question, it appears that Carter-Wallace's claim that it is entitled to use the words "Extra Dry", free and clear of Ever-Dry's assertion of a trademark therein, arose at least in part as a result of transaction of business in this district. The instant suit grows out of the fact that both parties sell their respective products bearing the words "Extra Dry" throughout the country and that one of the most important markets where they have been sold is in this district. Charges of unfair competition were directed by Ever-Dry to Carter-Wallace at its headquarters here, based in part on the fact that both were using the words "Extra Dry" on products sold here. Although the claim arose also in other districts, that fact would not derogate its having arisen here. Moreover, although Carter-Wallace's claim is in the form of a suit for declaratory judgment, a dispute of substance has arisen here,

---

1. Although the parties disagree upon whether § 1391(a) or § 1391(b) is the applicable venue statute—the issue hinging upon whether this unfair competition suit states solely diversity, non-federal claims—nothing turns on the resolution, since under either the "doing business" test is applicable under § 1391(c).

regardless of the form in which it is presented, and injunctive relief is demanded.

Accordingly Ever-Dry's motions to dismiss the complaint or to transfer the action must be denied *in toto*.

■ Turning to Carter-Wallace's motion to stay Ever-Dry's trademark infringement and unfair competition action in the Western District of Tennessee against it, Colonial Pharmacy (one of its customers) and Colonial's partners, which was begun on January 22, 1968, almost three months after commencement of the instant suit, such relief against prosecution of the later-filed action is clearly dictated by the fact that disposition of this action will resolve the questions—primarily likelihood of confusion—presented by the second action, see Fieldcrest Mills, Inc. v. Couri, 220 F. Supp. 929 (S.D.N.Y.1963), and, in the interest of avoiding duplicative litigation and conserving judicial resources, Mattel, Inc. v. Louis Marx & Co., Inc., 353 F.2d 421, 424 (2d Cir. 1965), see Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952), such relief is appropriate. This is not a case in which unusual circumstances are present that will justify a departure from the "first in time" rule. As a matter of fundamental fairness it cannot be said that the balance of conveniences favors the Western District of Tennessee rather than this district. The fact that Ever-Dry has its principal place of business, office and records in Tennessee is balanced by Carter-Wallace's maintenance of its principal office here, where its officers and records are found. Moreover, it is unclear what contacts Carter-Wallace has with the Tennessee forum. In view of the frequent trips made here in the past by Ever-Dry's officers on its business, for annual sales meetings and conferences with advertising agency represent-atives and others, little hardship should be visited upon them as a result of litigation in this forum. Much of the proof, particularly on the key issue of confusion, will probably be found here, where both parties have made substantial sales of products bearing the challenged mark, so that it is questionable whether Ever-Dry will be required to undertake any burdensome transportation of witnesses or documents from Tennessee, a matter usually entitled to only limited consideration, Lehn & Fink Products Corp. v. Milner Products Co., Inc., 117 F.Supp. 320 (S.D.N.Y.1953).

The mere fact that Ever-Dry has sued a customer (Colonial) [2] in addition to Carter-Wallace in the Tennessee action cannot alter the result, since this is a dispute essentially between the parties to this action, see Remington Prods. Corp. v. American Aerovap, Inc., 97 F.Supp. 644 (S.D.N.Y.), affd. per curiam, 192 F.2d 872 (2d Cir. 1951); Telephonics Corp. and Fabrionics Corp. v. Lindly & Co., 291 F.2d 445 (2d Cir. 1961), the result of which is likely, as a practical matter, to dispose of all related disputes. See Gerner v. Warehouse Service, Inc., 258 F.Supp. 316 (W.D.Okl.1966). Finally the Southern District's crowded docket is not, in and of itself, sufficient reason to transfer this action to another forum, in derogation of Carter-Wallace's choice of forum. While in an ordinary personal injury suit trial might be reached sooner in the Western District of Tennessee than here, this Court's calendar permits trial of commercial actions in a much shorter time, particularly where no jury is demanded. In any event, Rule 57, F.R.C.P., strongly suggests that a preference be granted in declaratory judgment suits, with a view to a speedy trial of the issues so that the parties may be guided thereby in their future conduct, and Ever-Dry is free to make such an application upon completion of pretrial discovery.

2. Any prejudice that Ever-Dry might suffer by staying its suit against Colonial appears to have been eliminated by Carter-Wallace's counsel's representation that Colonial is willing to appear voluntarily in this jurisdiction as a party to an infringement counterclaim brought by Ever-Dry.

For the foregoing reasons, Ever-Dry's motions are denied, and Carter-Wallace's motion to stay the action brought in the Western District of Tennessee is granted.

So ordered.