**SAMSON CORDAGE WORKS**

v.

**WELLINGTON PURITAN MILLS, INC.**

**Civ. A. No. 4095.**

United States District Court
D. Rhode Island.
April 25, 1969.

George M. Vetter, Jr., Matthew W. Goring, Providence, R. I., for plaintiff.

Herbert B. Barlow, Jr., Providence, R. I., for defendant.

## OPINION

PETTINE, District Judge.

This is an action for declaratory relief pursuant to 28 U.S.C. §§ 2201–2202, in which the plaintiff, a Massachusetts corporation with its principal place of business in Boston, Massachusetts, is suing the defendant, a Delaware corporation with its principal place of business in Louisville, Kentucky. At issue in this litigation is a trademark which the defendant has claimed is being infringed by the plaintiff. The plaintiff attacks that claim and seeks a declaration to the contrary. There is no dispute over the subject matter jurisdiction of the court, which is predicated upon 28 U.S.C. § 1332 (a) (1), the diversity jurisdiction, and

upon 28 U.S.C. § 1338, the federal trademark jurisdiction.

This is defendant's motion to dismiss the complaint, or in the alternative to transfer this action to the Western District of Kentucky on the grounds that there is no *in personam* jurisdiction in this court; that service of process has not properly been performed; that venue is improper, as a matter of law; that venue is inconvenient, as a matter of. discretion.[1]

The pertinent facts for purposes of this motion are as follows. Defendant manufactures rope, twine and other products and distributes those products on a nationwide basis not through salesmen or district sales offices but rather through manufacturer's representatives who purchase the goods from defendant and resell them in given territories. In the New England area, defendant's manufacturer's representative, it is conceded by both parties, is T. W. Evans Cordage Co., a Johnston, Rhode Island corporation. Evans is paid on a commission basis for sales of defendant's products and performs many functions for defendant in Rhode Island and New England. Specifically, Evans (1) calls on jobbers, distributors and retailers handling defendant's products to solicit and write orders for defendant's products, recommends which of defendant's products each should carry and in what amount, furnishes and sets up advertising displays promoting defendant's products and furnishes other promotional and sales materials, and, as an expert with respect to defendant's products, recommends which product is best for particular applications; (2) forwards orders obtained from jobbers, distributors and retailers to defendant's main office for acceptance; (3) receives from defendant a commission on all sales of defendant's marine products within the area whether or not such sales are made on orders obtained by or processed through the representative; (4) assists purchasers of defendant's products by following up on delayed orders, calling defendant's attention to needed adjustments to or replacements of defective products of defendant; (5) sends its own and related personnel to defendant's main offices in Louisville to attend sales and other meetings; and, (6) continuously and systematically corresponds through the mails, by telephone and otherwise with personnel in defendant's main offices in Louisville on business relating to the sale and promotion of defendant's products; (7) exclusively represents defendant as its exclusive manufacturer's representative for the states of Rhode Island, Connecticut, Massachusetts, Maine, New Hampshire, and Vermont for all defendant's marine products; (8) employs others to, among other things, obtain orders for defendant's products; (9) participates in trade shows within and without the New England area by working in display booths bearing defendant's name; and (10) is otherwise responsible for soliciting, servicing, and conducting on behalf of defendant, sales, accounts and other business of substantial worth in excess of $50,000 annually.

By letter dated March 6, 1969 defendant charged that plaintiff was infringing defendant's allegedly registered trademark GOLD BRAID for certain braided marine rope and that the use, by plaintiff, of the term GOLD-N-BRAID for rope would inevitably cause confusion in competitive markets. One such market is Rhode Island in which both defendant's and plaintiff's products, including the allegedly similar ropes, are sold. Plain-

---

1. There has been some problem with respect to whether the defendant waived its arguments as to venue. To so hold would be unwise for two reasons: (1) the defendant's motion does not, on its face, exclude venue and does use the terms "doing business", terms which are as applicable to venue as to *in personam* jurisdiction; (2) there has been here neither that material reliance by plaintiff on the failure of defendant to attack venue nor that passage of time and expenditure of energy in preparation for suit which so often prompt rulings of waiver. Moreover, defendant made clear on oral argument that venue, as well as jurisdiction, was intended to be attacked.

tiff subsequently commenced suit. The complaint and summons in this suit were served on Evans and on United States Corporation of Delaware, defendant's designated agent in defendant's state of incorporation.

At the outset clarity will be served by indicating the specific questions before this court. There is, first, the question of whether this court has *in personam* jurisdiction because defendant, through its representative Evans, either "does business" for jurisdictional purposes in Rhode Island or has "minimum contacts" for jurisdictional purposes in Rhode Island. Both of those questions are resoluble by reference, respectively, to Rhode Island common or statutory law. There is, second, the question whether a holding in defendant's favor on either of those questions is offensive to the Fifth Amendment to the Constitution. There is, third, the question whether process has properly been served under Rule 4 of the Federal Rules of Civil Procedure by the service on either Evans or United States Corporation of Delaware. There is, fourth, the question of whether venue is legally correct under 28 U.S.C. § 1391 (c) and, if incorrect, whether dismissal or transfer is the appropriate order under 28 U.S.C. § 1406(a). There is, fifth and finally, the question whether venue is convenient under 28 U.S.C. § 1404 (a).[2]

### *In Personam Jurisdiction*

#### *Doing Business*

■ As seen, defendant has made a Rhode Island entity, Evans, its manufacturer's representative for the entire New England area for certain of its products, has had Evans obtain on its behalf orders throughout New England, and has paid Evans on a commission basis for all of its products sold anywhere in New England. Through and in concert with Evans it has in Rhode Island performed numerous other acts and tasks that go far beyond simple solicitation of orders.

That activities such as those of the defendant constitute "doing business" for jurisdictional purposes was clearly recognized by Judge Aldrich, now Chief Judge of the Court of Appeals for this Circuit, in Denis v. Perfect Parts, Inc., 142 F.Supp. 259, 260–261 (D.Mass.1956). There, a New York corporation had only a "sales representative" in Massachusetts and moved to quash service on the ground of lack of personal jurisdiction. The court denied the motion, stating:

"Defendant is a New York corporation dealing in auto parts and accessories. It has no employees, in the ordinary sense, in Massachusetts. It has a 'sales representative' living in Greater Boston, hereinafter called salesman. Salesman solicits orders, on commission only. All orders are subject to acceptance in New York, and are filled from there. Salesman represents other companies in addition to defendant, and represents defendant in several other states, but his Massachusetts activities for defendant are regular and substantial. In addition to soliciting orders, he receives complaints, and renders some assistance in adjusting them. On occasion he carries samples of small parts and demonstrates them in connection with soliciting orders. He leaves catalogues and promotional material. From new customers he obtains credit information and forwards it to the defendant. Each month defendant furnishes salesman with a list of his customers who are delinquent. He makes some effort to collect these accounts, and not, infrequently receives checks, which he forwards to New York. The fact that he is not obliged to do this, and does it only because all orders are subject to New York approval and further orders will not be accepted from persons on the delinquent list until past due acounts have been paid, does not alter the fact that he is, in part, engaged in collections for defendant's benefit.

---

2. Plaintiff's brief has been of considerable benefit to the court in the preparation of this opinion and much of the court's language is borrowed therefrom.

"Even if mere solicitation of business is not enough (but cf. Lone Star Package Car Co. v. Baltimore & O. R. Co., 5 Cir., 212 F.2d 147), and 'something more' is required, I find and rule that such existed, and that defendant at the time of service was doing business in Massachusetts and subject to process. International Harvester Co. v. Com. of Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479; Nichols v. Cowles Magazines, Inc., D.C.D.Mass., 103 F.Supp. 864; Id., D.C., 108 F. Supp. 883; Formmaster Corp. v. G. H. Bishop Co., D.C.S.D.N.Y., 138 F.Supp. 115; Wyshak v. Anaconda Copper Mining Co., 328 Mass. 219, 103 N.E. 2d 230; Jet Manufacturing Co. v. Sanford Ink Co., 330 Mass. 173, 112 N.E.2d 252."

Accordingly, I find no less so, that defendant at the time of service was doing business in Rhode Island and subject to process.

*Minimum Contacts*

■ The Rhode Island Long Arm Statute, Section 9–5–33 of the General Laws of Rhode Island, provides, in relevant part:

"Every foreign corporation * * * that shall have the necessary minimum contacts with the state of Rhode Island, *shall be subject to the jurisdiction* of the state of Rhode Island, and *the courts of this state shall hold such foreign corporations * * * amenable to suit* in Rhode Island in every case not contrary to the provisions of the constitution or laws of the United States."

Here, it cannot be doubted that defendant, through its very large sales in Rhode Island and through its agent and its extensive *dealings with its* Rhode Island representative, has substantial contacts with the forum state. It has voluntarily availed itself of the privilege of conducting activities within Rhode Island and its actions have had effect here.

Defendant's assertion that the instant litigation "bears no relation whatsoever to Rhode Island property, interest or law" will not stand scrutiny. The genesis of this suit was defendant's charge that for plaintiff to sell its gold-colored braid-on-braid rope in the same competitive market as defendant sells its product is tortious. It is admitted that plaintiff is actively promoting and offering for sale its accused Gold'n Braid product in Rhode Island. Insofar as defendant's product is concerned, Rhode Island is one important market within the entire six-state New England area. If plaintiff's sales are, as defendant charges, tortious, that tort is in a very real sense being committed in Rhode Island and the present dispute clearly affects and is related to Rhode Island interests.[3]

The District Court for the Southern District of New York recently held that a dispute such as that between the present parties was not only related to, but "arose" in a judicial district in which the products of the parties were sold.

"Regardless whether the instant suit is deemed to invoke jurisdiction over the subject matter based on diversity of citizenship or a federal question, it appears that Carter-Wallace's claim that it is entitled to use the words 'Extra Dry', free and clear of Ever-Dry's assertion of a trademark therein, arose at least in part as a result of transaction of business in this district. The instant suit grows out of the fact that both parties sell their respective products bearing the words 'Extra Dry' throughout the country and that one of the most important markets where they have been sold is in this

---

3. It has been held that Rhode Island would, under the terms of its long arm statute, exercise jurisdiction over a suit for an alleged wrongful death occurring in Rhode Island when the defendant's sole connection with the state was the sale of the equipment alleged to cause the death.

Rosen v. Savant Instruments, Inc., 264 F.Supp. 232 (E.D.N.Y.1967). The unfair competition of which defendant complains is no less a tort and is no less cited in Rhode Island by reason of product sales in the state.

district. Charges of unfair competition were directed by Ever-Dry to Carter-Wallace at its headquarters here, based in part on the fact that both were using the words 'Ever-Dry' on products sold here. Although the claim arose also in other districts, that fact would not derogate its having arisen here. Moreover, although Carter-Wallace's claim is in the form of a suit for declaratory judgment, a dispute of substance has arisen here, regardless of the form in which it is presented, and injunctive relief is demanded." Carter-Wallace, Inc. v. Ever-Dry Corp., 160 USPQ 63, 65 (S.D.N.Y.1968).

In its recent decision in Caso v. Lafayette Radio Electronics Corp., 370 F. 2d 707, 710 (1 Cir. 1966), the Court of Appeals for this Circuit specifically stated that jurisdiction could properly be exercised over a foreign corporation whose contacts with forum state were not only far less substantial than are Wellington Puritan Mills' here,[4] but were also unrelated to the cause of action:

"There is no question that Massachusetts could, if it chose, exercise jurisdiction here. * * * Here it can be inferred that the defendant obtains a substantial volume of sales through the twin conduits of the Boston store and the mail order catalogues distributed by it. With respect to transactions arising from the activities of Lafayette of Massachusetts it seems clear that the defendant has enough impact on the commerce of Massachusetts to warrant the extension of jurisdiction. * * * "

The Rhode Island legislature has directed that jurisdiction may be exercised whenever there are constitutionally sufficient minimum contacts. On the facts of this case the contacts are more than ample.

### Constitutional Limitation

In Del Sesto v. Trans-World Airlines, Inc., 201 F.Supp. 879 (D.R.I.1962) the Chief Judge of this Court stated at 882:

"(T)he legislature of Rhode Island has chosen to exercise jurisdiction over foreign ·corporations up to the constitutional limitation."

■ It would serve no useful purpose here to reanalyze the Fifth Amendment boundaries upon the exercise of in personam jurisdiction by the federal courts, when the equivalent Fourteenth Amendment boundaries upon the exercise of in personam jurisdiction by the state courts have been so well delineated by other courts. See, e. g., Del Sesto, supra; Japan Gas Lighter Assoc. v. Ronson Corp., 257 F.Supp. 219, 232–233 (D.N.J. 1966). Rather it suffices here to indicate that, on the facts previously stated, defendant's contacts with Rhode Island are so substantial as to bring the defendant well within the constitutional boundaries.

### Service of Process

#### Service of Evans

■ It is well-established that when, because of its activities through a local entity, a corporation is doing business for jurisdictional purposes within a district, that entity is its "managing or general agent" within F.R.Civ.P. 4(d) (3). Lone Star Package Car Co. v. Baltimore & Ohio R. Co., 212 F.2d 147, 152 (5 Cir. 1954). Thus, in Del Sesto, supra, 201 F.Supp. at 882, this Court, after finding that TWA was doing business in Rhode Island through its agent Eastern Air Lines, held that jurisdiction over TWA was properly acquired by service upon Eastern:

"Rule 4(d) (3) of the Federal Rules of Civil Procedure provides for the service of a summons upon a foreign

---

4. The New York corporation's activities in Massachusetts consisted of selling goods outright to a wholly-owned subsidiary, distributing its mail-order catalogues through the subsidiary, and mailing its products to Massachusetts customers who directed mail orders to its New York mail-order center. The Massachusetts subsidiary did not fill mail orders or receive any commission on mail order sales.

corporation by delivering a copy of the summons and complaint to a managing agent of said corporation. From the activities hereinbefore summarized, it is clear that Eastern was a managing agent of the defendant in this state. Service of said summons upon Eastern effectuated valid service on the defendant under said Rule 4(d) (3) and this Court thereby acquired jurisdiction over the defendant. Scholnik v. National Air Lines, [6 Cir., 219 F.2d 115] supra; Kenmore-Louis Theatre, Inc. v. Sack, 1961, D.C.Mass., 192 F. Supp. 711; Nash-Ringel, Inc. v. Amana Refrigeration, Inc., 1959, D.C.N.Y., 172 F.Supp. 524. The motion to dismiss for want of jurisdiction or, in lieu thereof, to quash service of process is denied."

■ Similarly here, Evans is defendant's "managing or general agent" and this Court acquired jurisdiction over the defendant by service upon Evans under Rule 4(d) (3).

### Service on U. S. Corporation Co.

■ Even if Evans was not defendant's "managing or general agent" and service on defendant through Evans was improper, personal jurisdiction over defendant has clearly been acquired by service, under Federal Rule 4(e), and in the mode directed by Rule 4(e), R.I.R.C.P.

The Rhode Island rule, in pertinent part, provides that any foreign corporation that "is subject to the jurisdiction of the courts of the state" may be served outside the state "by mailing a copy of the summons and complaint to any such officer or agent (for service of process designated by the corporation in the state of incorporation) or to the corporation at its business address designated in the state of incorporation by registered or certified mail, return receipt requested, or by any other method ordered by the court to give such corporation notice of the action and sufficient time to prepare any defense thereto."

The Marshal's Return shows that the complaint and summons were mailed, certified mail, return receipt requested, to U. S. Corporation Co., designated agent of Wellington Puritan Mills, Inc., on March 26, 1969. The receipt has been returned showing delivery on March 27, 1969.

This was good service, the fact of which has not been questioned, on defendant.[5]

### Venue

28 U.S.C. § 1391(c) states:

"A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business * * *."

It is conceded that defendant is neither incorporated nor licensed to do business in Rhode Island. Defendant argues that it is not "doing business" in Rhode Island sufficient to permit venue here and that this action should, pursuant to 28 U.S.C. § 1406(a), be dismissed or transferred to the Western District of Kentucky, its principal place of business.

■ It is the better rule and is now virtually settled that federal law governs the question of "doing business" for venue purposes under 28 U.S.C. § 1391 (c). E. g., Houston Fearless Corp. v. Teter, 318 F.2d 822 (10th Cir. 1963). Without deciding whether the test of "doing business" is the same for the purpose of venue as the test of "presence" or "minimum contacts" for the purpose of in personam jurisdiction and service of process, see 1 Moore's Federal Practice § 0.142 (5.–3), pp. 1497–1500, I find, on the facts of this case, that defendant is "doing business" in Rhode Island for purposes of venue. Unquestionably the facts show continuing and systematic contact with Rhode Island and indicate

---

5. Even if service had not yet been made, an action should not be dismissed if it appears that proper service may yet be made, e. g., William I. Horlick Co. v. Bogue Electric Mfg. Co., 140 F.Supp. 514, 515 (D.Mass.1956). This is especially true when, as here, defendant has been afforded notice of the action and sufficient time to prepare its defense.

that defendant has far more than a sporadic, occasional, or passing interest in the cultivation of the Rhode Island market. See Frazier v. Alabama Motor Club, Inc., 349 F.2d 456 (5th Cir. 1965). Because of this holding, the court does not reach the question of whether dismissal or transfer is the appropriate practice here under 28 U.S.C. § 1406(a).

### Convenient Forum [6]

28 U.S.C. § 1404(a) states:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Defendant in the instant case argues that because Louisville, Kentucky is its principal place of business a transfer to the United States District Court for the Western District of Kentucky is more convenient than the continued maintenance of the suit in this District. No doubt defendant's convenience would be served by such a transfer, but defendant's convenience is only one of numerous factors to be considered in deciding whether to transfer. See 1 Moore's Federal Practice § 0.145(5) pp. 1777–1787. In this case, four factors weigh the plaintiff's side of the balance: (1) plaintiff, a Massachusetts corporation, has chosen this forum as the most convenient one for its purposes; (2) defendant, a nationwide business, takes the risk of amenability to suit across the nation; (3) the trademark dispute which forms the basis for this suit occurred in the New England market, and in particular, in Rhode Island; (4) defendant has shown no time-saving or other administrative benefit to be derived from a transfer to Kentucky. I conclude, therefore, that defendant has not carried the burden of showing that a transfer to Kentucky would serve convenience. See Polychrome Corp. v. Minnesota Mining

and Mfg. Co., 259 F.Supp. 330 (S.D.N.Y. 1966).

For the reasons stated, defendant's motions to dismiss or transfer are denied. Plaintiff will prepare an order accordingly.

---

6. Defendant never actually stated that its motion to transfer was pursuant to 28 U.S.C. § 1404(a) but rather seemed to rely on 28 U.S.C. § 1406(a). However, the substance of its transfer argument was almost totally directed to convenience. Accordingly I treat the motion as a § 1404(a) transfer motion.