**Donald WESTPHAL and Cheryl Ann Westphal, P.P.A.**

**v.**

**STONE MANUFACTURING CO.**
**Civ. A. No. 3567.**

United States District Court
D. Rhode Island.
Nov. 10, 1969.

1188

Leonard Decof, Providence, R. I., for plaintiffs.

John T. Keenan, Providence, R. I., for defendant.

## OPINION

PETTINE, District Judge.

This is a tort action for damages resulting from burns received by the plaintiff, a citizen of the State of Rhode Island, when clothes she was wearing ignited into a fire. The defendant manufacturer is a foreign corporation with its principal place of business in South

Carolina. Jurisdiction is alleged on the basis of 28 U.S.C. § 1332, that is diversity of citizenship, and an amount in controversy exceeding $10,000 exclusive of interest, costs and fees.

The defendant has moved to dismiss on five separate grounds all of which really concern defendant's "contacts" with Rhode Island for the purposes of in personam jurisdiction, service of process and venue.

## FACTS

The defendant manufactured clothing at its principal place of business in Greenville, South Carolina and sold the same to a retail store in Rhode Island where, in turn, it was purchased for the plaintiff's use. The answers to the plaintiffs' interrogatories establish that the defendant's contacts in Rhode Island revolve around the solicitation of business in this state since 1961 by a commission sales agency that maintained an office in Massachusetts. The dollar volume of such business averaged $126,647 in 1961; $151,486 in 1962; $165,802 in 1963 and $153,319 in 1964. All orders, shipments and billing of goods was on a direct basis between the defendant in South Carolina and the various retail stores in Rhode Island. The orders were forwarded from Rhode Island customers directly to the defendant in Greenville, South Carolina for acceptance or rejection and all shipments were mailed and billed from the defendant to these various Rhode Island customers, who in turn paid the defendant directly.

Stone Manufacturing Co. advertised through a national apparel trade publication and in addition apparently mailed brochures containing order slips and styles twice yearly to its customers; advertisements placed by suppliers using the trade name (which trade name was on all the articles shipped into Rhode Island) may have appeared in national magazines.

The plaintiff argues that the threshold requirement of necessary minimum contacts with the State of Rhode Island at the time of the alleged incident so as to subject the defendant to suit in this court has been satisfied. The defendant on the other hand urges that the question of whether or not the defendant had the necessary minimum contacts with the State of Rhode Island is not the sole controlling ground for dismissal and is not determinative in deciding whether or not venue is proper.

As conceded and stipulated by the parties, the defendant has never been licensed to do business in Rhode Island; nor maintained any facility for conducting business in this state; nor employed or retained officers or agents in Rhode Island.

## DISCUSSION

The question whether the defendant was "doing business" within the state and therefore "present" for jurisdictional and venue purposes requires the joint consideration of 28 U.S.C. § 1391(c) and the state's so-called "long arm statute" § 9–5–33 Rhode Island General Laws 1956 as amended.[1]

In both, the determinative point can only be resolved by an analysis of the defendant's factual contacts with the forum state. These must decide whether the corporation was "doing business" in the state and so was "present" for jurisdictional and/or venue purposes.

1. "Every foreign corporation . . . that shall have the necessary minimum contacts with the state of Rhode Island, shall be subject to the jurisdiction of the state of Rhode Island, and the courts of this state shall hold such foreign corporations * * * amenable to suit in Rhode Island in every case not contrary to the provisions of the constitution or laws of the United States." Sec. 9–5–33 General Laws of Rhode Island 1956 as amended.
"A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes." 28 U.S.C. § 1391(c).

However, is such a decision made according to federal law or is the law of the state all controlling?[2] "It is the better rule and is now virtually settled that federal law governs the question of 'doing business' for venue purposes under 28 U.S.C. § 1391(c)."[3] Doing business for jurisdictional purposes should be decided in accordance with the law of the state wherein the court is sitting.[4]

The measure of difficulty and confusion such a question has presented in other forums is not of significance in this district.

The Chief Judge of this court in Del-Sesto v. Trans-World Airlines, Inc., 201 F.Supp. 879 (D.R.I.1962) stated:

"(T)he legislature of Rhode Island has chosen to exercise jurisdiction over foreign corporations up to the constitutional limitation."

The Rhode Island Supreme Court has reaffirmed this position in Conn v. ITT Aetna Finance Company et al., 252 A.2d 184, 186, referring to the Rhode Island statute it said,

" * * * That act made foreign corporations and nonresidents individuals having the necessary 'minimum contacts' with this state amenable to the jurisdiction of our courts subject only to whatever limitations might be imposed by the constitution or laws of the United States; in substance and in effect, it empowers our courts * * * 'to exercise jurisdiction over foreign corporations up to the constitutional limitation.' " (citing DelSesto v. Trans World Airlines, Inc., supra)

The Rhode Island legislature adopted the "long arm statute" in harmony with the trend of the minimum contacts concept as enunciated in McGee v. International Life Ins. Co., 355 U.S. 220, 222, 78 S.Ct. 199, 2 L.Ed.2d 223. Quoting from International Shoe v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95:

" * * * due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "

The Rhode Island Supreme Court in Conn v. ITT Aetna Finance Company et al., supra, 252 A.2d at page 187, in establishing discernible guidelines for determining such minimum contacts looked to the permissible constitutional limits in stating: "At best these are illusive phrases. 'Traditional notions of fair play and substantial justice' as a measuring rod stands on the same footing as 'fundamental fairness;' and 'fundamental fairness' as a test ' * * * is one on a par with that of shocking the conscience of the Court.' Black, J., concurring in Duncan v. Louisiana, 391 U.S. 145, 169, 88 S.Ct. 1444, 20 L.Ed.2d 491. Given such an ambulatory grant of power, the task of determining when an exercise of jurisdiction over a nonresident is permissible and when impermissible.

' * * * will require an evolutionary process rather than a quick definitive statement, as these terms involve subjective judgments that must be based upon a multitude of variant factors as they are presented in a multitude of cases. The existence or non-existence of the necessary 'minimum contacts' to justify the upholding of personal jurisdiction over foreign corporations under the Fourteenth Amendment as interpreted in the *International Shoe Company* case must obviously be worked out with reference to the facts of a particular case rather than in a statement of dogmatic rules of

---

2. 1 Moore's Federal Practice § 142, p. 1498 n. 39.

3. Samson Cordage Works v. Wellington Puritan Mills, Inc., 303 F.Supp. 155 (D.R.I. April 25, 1969).

4. Rensing v. Turner Aviation Corporation, D.C., 166 F.Supp. 790.

all-inclusive principles.' Velandra v. Regie Nationale Des Usines Renault, 6 Cir., 336 F.2d 292, 295.

It is within the frame of this process that we inquire whether * * * had sufficient 'minimum contacts' with this state to permit our courts to exercise in personam jurisdiction over them."

█ So it would seem that in this district "doing business" in 1391(c) for venue purposes under the federal standard and necessary "minimum contacts" for amenability to service of process within the frame work of constitutional due process as developed by state case law should be equivalents.

It appears to this court that such uniformity is desirable and is best continued by adopting Professor Moore's approach, " * * * and, although the matter is not free from doubt, and there is very respectable contra authority, we believe that if a corporation is amenable to service of process it should be held to be 'doing business' for venue purposes. In the borderline situation, a court must look to the particular facts of each case and examine the nature of the corporation's contacts with the state, in relation to the suit that is being pressed against it. * * * if it is not unfair to subject the corporation to the court's jurisdiction by service of process, it seems wise and not unfair to hold that there is a proper venue, particularly when the case can be transferred to another venue, if convenience warrants." [5]

█ Adopting this procedure, it must now be determined whether or not the facts of the case at bar meet the test of "minimum contacts" for the purpose of in personam jurisdiction.

The cause of action arose out of activities totally connected with this district. From 1961 on, there has been a continuing and systematic contact with Rhode Island as represented by substantial sales to thirteen retail stores located in seven different cities or towns of this state. There was a systematic contact with Rhode Island through the shipping, mailing and billing of goods from the defendant directly to these customers; and the further cultivation of this market by mailing brochures to all customers with order slips twice yearly. In the five years prior to the accident, the defendant sold more than $750,000 worth of merchandise to Rhode Island retailers.[6] It reaps substantial financial rewards from the State of Rhode Island. This conduct cannot be termed a passing interest, occasional or sporadic.

" * * * due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice.' " [7]

It cannot be questioned that defendant has substantial connection with the State of Rhode Island to afford the State jurisdiction under the statute.

In McGee v. International Life Insurance Co., supra, there was a situation involving a somewhat similar statute, and the Court, after referring to the *International Shoe* case, went on to say:

"Looking back over this long history of litigation, a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents. In part this is attributable to the fundamental transformation of our national economy over the years. Today many commercial transactions touch two or more states and many involve parties separated by the full continent. With this increasing nationalization of commerce has come

---

5. 1 Moore's Federal Practice § 142, p. 1499.

6. See answer to plaintiffs' interrogatory numbered 23.

7. International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95.

a great increase in the amount of business conducted by mail across state lines. At the same time modern transportation and communication have made it less burdensome for a party sued to defend himself in a state where he engages in economic activity."

Rhode Island's Supreme Court has recently commented on this liberal trend of extending the scope of state jurisdiction over foreign corporations.

"It is against the background of this trend that our legislature enacted the long-arm statute in 1960 (P.L.1960, Chap. 124). That act made foreign corporations and nonresidents individuals having the necessary 'minimum contacts' with this state amenable to the jurisdiction of our courts subject only to whatever limitations might be imposed by the constitution or laws of the United States; in substance and in effect, it empowers our courts ' * * * to exercise jurisdiction over foreign corporations up to the constitutional limitation.' * * citations omitted." [8]

▇ Furthermore, in a jurisdictional question such as this, the situs of the tort must also be considered. As this court pointed out in Samson Cordage Works v. Wellington Puritan Mills, Inc., supra n. 3:

"It is admitted that plaintiff is actively promoting and offering for sale its accused Gold'n Braid product in Rhode Island. Insofar as defendant's product is concerned, Rhode Island is one important market within the entire six-state New England area. If plaintiff's sales are, as defendant charges, tortious, that tort is in a very real sense being committed in Rhode Island and the present dispute clearly affects and is related to Rhode Island interests. (n. 3 It has been held that Rhode Island would, under the terms of its long arm statute, exercise jurisdiction over a suit for an alleged

wrongful death occurring in Rhode Island when the defendant's sole connection with the state was the sale of the equipment alleged to cause the death. Rosen v. Savant Instruments, Inc., 264 F.Supp. 232 (E.D.N.Y.1967). The unfair competition of which defendant complains is no less a tort and is no less cited in Rhode Island by reason of product sales in the state.) "The District Court for the Southern District of New York recently held that a dispute such as that between the present parties was not only related to, but 'arose' in a judicial district in which the products of the parties were sold.

'Regardless whether the instant suit is deemed to invoke jurisdiction over the subject matter based on diversity of citizenship or a federal question, it appears that Carter-Wallace's claim that it is entitled to use the words 'Extra Dry', free and clear of Ever-Dry's assertion of a trademark therein, arose at least in part as a result of transaction of business in this district. The instant suit grows out of the fact that both parties sell their respective products bearing the words 'Extra Dry' throughout the country and that one of the most important markets where they have been sold is in this district. Charges of unfair competition were directed by Ever-Dry to Carter-Wallace at its headquarters here, based in part on the fact that both were using the words 'Ever-Dry' on products sold here. Although the claim arose also in other districts, that fact would not derogate its having arisen here. Moreover, although Carter-Wallace's claim is in the form of a suit for declaratory judgment, a dispute of substance has arisen here, regardless of the form in which it is presented, and injunctive relief is demanded.' Carter-Wallace, Inc. v.

8. Conn. v. ITT Aetna Finance Company et al., 252 A.2d 184, 186.

Ever-Dry Corp., 160 USPQ 63, 65 [290 F.Supp. 735] (S.D.N.Y.1968). "In its recent decision in Caso v. Lafayette Radio Electronics Corp., 370 F.2d 707, 710 (1 Cir. 1966), the Court of Appeals for this Circuit specifically stated * * * 'There is no question that Massachusetts could, if it chose, exercise jurisdiction here. * * * Here it can be inferred that the defendant obtains a substantial volume of sales through the twin conduits of the Boston store and the mail order catalogues distributed by it. With repect to transactions arising from the activities of Lafayette of Massachusetts it seems clear that the defendant has enough impact on the commerce of Massachusetts to warrant the extension of jurisdiction. * * * ' "

■ It seems clear to this court in reviewing these various decisions by the United States Supreme Court and other federal courts that the cases involving minimum contacts must be decided on a case to case basis within the framework of the due process clause that there be such contacts with the state of the forum that the maintenance of the suit will not offend traditional notions of fair play and substantial justice. The totality of the contacts both quantitatively and qualitatively must be considered to the full scope of the periphery of constitutional permissibility.[9]

### Service of Process

Ground 5 of the defendant's motion to dismiss reading, "Service was not made upon the defendant in any manner required or authorized by the statutes of the State of Rhode Island," has neither been briefed nor argued.

■ The record discloses that on the plaintiffs' Motion for Service of Process the court entered an order prescribing the manner for the service of such process, all in keeping with Section 9–5–33 General Laws of Rhode Island 1956 as amended and Rule 4(d) (3) of the Federal Rules of Civil Procedure. There appears to have been compliance with the order of court. This ground of the defendant's motion is without merit.

### Convenient Forum

The favorable determination of a jurisdictional venue question still leaves open for consideration 28 U.S.C. § 1404 (a).

"For the convenience of the parties and witnesses, in the interest of justice a district court may transfer any civil action to any other district where it might have been brought."

■ The defendant in the instant case argues that a transfer to the forum of its principal place of business would be more convenient than the continued maintenance of the suit in this district. Unquestionably this would be so. However, the defendant's convenience is only one of numerous factors to be considered in deciding whether to transfer. See 1 Moore's Federal Practice, § 0.145(5) pp. 1777–1787.

The section in question mandates that the interest of justice premise the determination whether a civil action be transferred to any other district for the convenience of the parties and witnesses; that is, as it may benefit both parties to the action.

In this case, *many* factors weigh the plaintiffs' side of the balance:

(1) Plaintiffs have chosen this forum as the most convenient for their purposes;

(2) the defendant engaged in this interstate commerce, thus taking the risk of amenability to suit in Rhode Island;

(3) the tort occurred in Rhode Island;

(4) as argued, the witnesses, doctors and hospital records are in Rhode Island;

(5) excepting for a possible view of the manufacturing process, the defendant has shown no benefit to be derived by a transfer of this case to South Carolina.

9. See 79 Harv.L.Rev. 1164, "Lines of Future Development".

■ In considering all these factors, this court in the exercise of its discretion concludes that the interests of justice dictate retention of the controversy in this district. It is my opinion that to do otherwise will place the plaintiffs at a distinct disadvantage, unduly inconvenience the witnesses and make more burdensome the expenses of litigation.

For reasons stated herein, the defendant's motion to dismiss is hereby denied.