**In the Matter of TECH CONSOLI- DATED, INC.**
**No. BK–70–14.**

United States District Court,
D. New Hampshire.
June 22, 1971.

William Young, Bingham, Dana & Gould, Boston, Mass., and John Barto, Orr & Reno, Concord, N. H., for Randy Manufacturing Co., Inc.

Frederick G. Fisher, Jr., Hale & Dorr, Boston, Mass., and Norman Stahl, Devine, Millimet, McDonough, Stahl & Branch, Manchester, N. H., for the Trustee of Tech Consolidated, Inc., Gerald Cabitt.

BOWNES, District Judge.

This is a petition for review of a decision of the Referee in Bankruptcy. The trustee of Tech Consolidated, Inc., (hereinafter Tech) filed a "turnover" petition against Randy Manufacturing Co., Inc., (hereinafter Randy) for recovery of the value of Tech's property, and a petition to require Randy to assume the duties of the bankrupt. Randy brought motions to quash service of process and to dismiss for lack of juris-

diction and/or venue. The Referee denied these motions and Randy brought this petition for review.

On January 19, 1970, an involuntary petition for bankruptcy was filed in this district against Tech, a New Hampshire corporation doing business in Derry, New Hampshire. It was adjudicated bankrupt on February 5, 1970, and Gerald Cabitt, Esq., was appointed trustee at a meeting of creditors March 13, 1970. Tech was a wholly owned subsidiary of Randolph Manufacturing Co., Inc., (hereinafter Randolph) a Delaware corporation with its principal place of business in Randolph, Massachusetts. On October 14, 1969, the First National Bank of Boston, the holder of a security interest in some of Tech's receivables and inventory, obtained a security interest in all the general intangibles, machinery, equipment, inventory, and receivables of Tech to secure all past and future indebtedness of Randolph. On January 28, 1970, ten days after the involuntary bankruptcy petition was filed, the First National Bank of Boston sold all of the assets of Randolph (including all of the assets of Tech) to Randy, a Massachusetts corporation which had been formed December 29, 1969.

On April 2, 1970, the trustee of Tech filed a petition against Randy for "turnover" of the value of the property converted and a petition to have it designated as the proper party to prepare bankruptcy schedules and to perform the duties of the bankrupt. On April 4, 1970, service of process was made in Derry, New Hampshire, on Peter Mackin, allegedly the person in charge of Randy's operations in New Hampshire. When service was made, Randy was in the process of disassembling the equipment of the plant in Derry, New Hampshire (formerly occupied by Tech), and was transporting the equipment to a plant in Saco, Maine. This plant was subsequently occupied by Randy Tech, Inc., which was incorporated on April 15, 1970, as a wholly-owned subsidiary of Randy.

The Referee found that the activities of Randy in Derry, New Hampshire, between January 28, 1970, and May 15, 1970, the date when the Derry plant was completely vacated, were sufficient to meet the jurisdictional requirements of "doing business" in New Hampshire. He also found that service and venue were proper.

## RULINGS

The district courts, sitting as bankruptcy courts, are given broad jurisdiction over the estates of bankrupts by Section 2(a) of the Bankruptcy Act, 11 U.S.C. § 11(a) (1964). The issue here is whether there is proper jurisdiction, service and venue as to Randy in this district. It should be made clear at the outset that the question of whether this action falls within the summary jurisdiction of the bankruptcy court or whether a plenary action is required is not at issue here.

Tech was incorporated and did business in New Hampshire, and petitioner is a Massachusetts corporation. "The amenability of a foreign corporation to suit in a federal court in a diversity action, under Federal Rule 4(d) (7), is determined in accordance with the law of the forum state." Seymour v. Parke, Davis & Co., 294 F.Supp. 1257, 1259 (D.N.H.1969), aff'd. 423 F.2d 584 (1st Cir. 1970).

█ Jurisdiction will lie in a particular forum state if the nonresident defendant has sufficient minimum contacts with the state to insure that maintenance of the suit will not offend traditional notions of fair play and substantial justice. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). This test has been realistically and reasonably applied in New Hampshire on a case by case basis with the objective of exercising jurisdiction to the full constitutional limits. Sanders Associates, Inc. v. Galion Iron Works & Mfg. Co., 304 F.2d 915 (1st Cir. 1962); Roy v. North American Newspaper Alliance, Inc., 106 N.H. 92,

205 A.2d 844 (1964); Benson v. Brattleboro Retreat, 103 N.H. 28, 164 A.2d 560 (1960); LaBonte v. American Mercury Magazine, Inc., 98 N.H. 163, 96 A. 2d 200 (1953).

■■ The Referee's findings of fact are binding unless they are clearly erroneous. Washington v. Houston Lumber Co., 310 F.2d 881 (10th Cir. 1962). Although Randy had no salesman in the state, made no sales in the state, and was not licensed to do business in the state, these facts do not automatically foreclose jurisdiction in this district. The Referee found that Randy did not simply dismantle the equipment in the plant but from January 28 to May of 1970, continued to manufacture the same products formerly manufactured by Tech. This finding is amply supported by the evidence. Mr. Shulman, president and treasurer of Randy, stated that molds for footwear which had been in process were completed in and shipped from Derry. Deposition of Charles Shulman, pp. 44–45. Gerald Cabitt, the trustee for Tech, testified that on March 15 or 16, 1970, he observed six to ten people engaged in manufacturing molds, two women packing rubber boots and employees dismantling machinery. Transcript of Hearing, pp. 21–22. The evidence also discloses that Randy paid its employees over $32,000 in wages in the first quarter (January-March) of 1970. The majority of these employees were New Hampshire residents. In addition, the company paid numerous bills incurred in New Hampshire, including a $1,330 bill for electricity used from March 25, 1970 to April 24, 1970. These facts fully support the Referee's findings that Randy employed labor and incurred manufacturing expenses "far in excess of what would be required for removal purposes." [1]

The opinion of the First Circuit Court of Appeals in Seymour v. Parke, Davis & Co., *supra*, indicates that two criteria are important in determining whether jurisdiction will lie. One is the plaintiff's interest in the forum, and the second is fairness to the defendant. 423 F.2d 584, 586–87. The plaintiff-bankrupt here is a New Hampshire corporation and has a legitimate interest in having New Hampshire as a forum. There are a number of reasons why it is not unfair to the defendant, *i. e.*, it will not offend traditional notions of fair play and substantial justice, to subject it to this court's jurisdiction. Since Randy was incorporated only one month prior to the acquisition of Tech, the activities of Randy in New Hampshire were, undoubtedly, a major portion of its business, and New Hampshire might fairly be characterized as one of its major places of doing business during the four month period. In any event, its manufacturing activities and dismantling activites were substantial, continuous, and systematic over a four month period. Finally, under N.H.Rev.Stat. Ann. Ch. 300:14, if a "foreign corporation commits a tort in whole or in part in New Hampshire against a resident of New Hampshire, such acts shall be deemed to be doing business in New Hampshire. * * * " The acquisition and removal of Tech's property by Randy is allegedly tortious in nature because it defrauds creditors and, if there was fraud, it was committed, at least in part, in New Hampshire.

■ For all these reasons, I hold that Randy was doing business in New Hampshire on a level sufficient to satisfy New Hampshire's jurisdictional test. Moreover, it does not impose an unfair burden on Randy to subject it to this court's jurisdiction; in fact, it would be manifestly unfair to the bankrupt and its creditors to hold otherwise.

■ I now turn to the question of service of process. Peter Mackin was served in hand in Derry, New Hampshire. N.H.Rev.Stat.Ann. Chs. 300:11,

---

[1]. The fact that Randy was engaged in manufacturing in the state is not a prerequisite to jurisdiction. The employment of New Hampshire residents, the bills incurred in New Hampshire, and the continuous activity in the state are, in my opinion, sufficient to confer jurisdiction, even if the only activity was dismantling the plant.

300:12, and 300:13 govern service of process on foreign corporations. Chs. 300:11 and 300:12 provide for service of process on an appointed agent or the Secretary of State. Ch. 300:13 states that service of process on foreign corporations may be made "in any other manner provided by law." Under N.H.Rev. Stat.Ann. Ch. 510:14, service may be made upon "any agent, overseer or other person having the care of any of the property or charge of any business of the corporation" if no director, trustee, clerk, treasurer, cashier or manager is in the state. None of these named persons were in the state, and the deposition of Mr. Shulman makes is clear that Mr. Mackin was in charge of Randy's operations in New Hampshire. Deposition of Charles Shulman, pp. 19–20. Service of process was, therefore, proper. See Taylor v. Klenzade Products, Inc., 97 N. H. 517, 92 A.2d 910 (1952).

The final issue is that of venue. Since Tech was a New Hampshire corporation with its principal place of business here, the bankruptcy *proceedings* are in the proper district. The word proceedings is given emphasis to distinguish it from *controversies*. Under the Bankruptcy Act, once it is determined that the bankrupt was a resident of this district, the Referee automatically has venue over the bankruptcy proceedings. See 11 U.S.C. § 11(a) (6) and 1 Collier on Bankruptcy ¶ 2.14. Proceedings may be generally equated with administrative matters, and the petition to have Randy perform the duties of the bankrupt and prepare bankruptcy schedules is directed at administrative matters. See 11 U.S.

C. § 25. When a controversy is involved, however, the Referee may or may not be empowered to resolve it. See 11 U.S.C. § 11(a) (7).

■ The petition for "turnover" may or may not fall within the powers of the Referee under 11 U.S.C. §§ 11(a) (6) & (a) (7). There are two procedural methods that may be utilized to determine whether property of the bankrupt has been unlawfully transferred to a third party. A petition for "turnover" is one and a plenary action is the other. The Referee cannot hear a "turnover" petition unless he has "summary jurisdiction." Whether the Referee has summary jurisdiction over a "turnover" petition depends on a variety of factors. See 2 Collier on Bankruptcy ¶ 23.10. If summary jurisdiction exists, then under 11 U.S.C. §§ 11(a) (6) & (a) (7), venue in the bankruptcy court would be proper.

■ Since the issue of summary jurisdiction has not been decided, the plenary action procedure for adjudicating whether the transfer of property of the bankrupt to a third party is unlawful must be explored. Because of the "except as herein otherwise provided" clause of 11 U.S.C. § 11(a) (7) and the provisions of Section 23 of the Bankruptcy Act, 11 U.S.C. § 46, a plenary action is required if the third party (Randy) is a bona fide adverse claimant and the Referee does not have summary jurisdiction.[2]

Section 23 deals with jurisdiction of district courts in plenary actions by the trustee against adverse claimants.[3] Un-

2. The distinction between summary jurisdiction and plenary actions is extensively treated in 2 Collier on Bankruptcy ¶ 23.01 et seq. It should be noted that section 23 does not apply where summary jurisdiction exists.

3. Section 23 provides:
(a) The United States district courts shall have jurisdiction of all controversies at law and in equity, as distinguished from proceedings under this title, between receivers and trustees as such and adverse claimants, concerning the property acquired or claimed by the receivers or trustees, in the same manner and to the same extent as though such proceedings had not been instituted and such controversies had been between the bankrupts and such adverse claimants.
(b) Suits by the receiver and the trustee shall be brought or prosecuted only in the courts where the bankrupt might have brought or prosecuted them if proceedings under this title had not been instituted, unless by consent of the defendant, except as provided in sections 96, 107, and 110 of this title.

der section 23(a), it must be assumed that the bankrupt had not instituted bankruptcy proceedings and jurisdiction is determined as if the action was between the bankrupt (Tech) and the adverse claimant (Randy). If this assumption is made, the action by Tech against Randy would be based solely on diversity of citizenship. Consequently, since Tech was a New Hampshire corporation, the provisions of 28 U.S.C. § 1391(a) would be satisfied and venue would be proper.[4]

Section 23(b) contains an exception for actions based on Sections 60, 67, and 70 of the Bankruptcy Act, 11 U.S.C. §§ 96, 107, & 110 (1964). These sections deal with preferences, fraudulent transfers, and title to property. Under each of them, the courts of bankruptcy and the appropriate state courts are given concurrent jurisdiction if a plenary action is required. See 11 U.S.C. §§ 96(b), 107(e), & 110(e) (3). If any of these sections are applicable, venue is not based solely on diversity, but on federal law. As a consequence, the provisions of 28 U.S.C. § 1391(a) (diversity of citizenship) are not controlling, and since this is an action for the value of the property, the provisions of 28 U.S.C. § 1391(c) become applicable. Under 28 U.S.C. § 1391(c), venue is proper in a particular district if a corporation is "doing business" in that district.

The question of venue under 1391(c) is governed by federal law. Westphal v. Stone Mfg. Co., 305 F.Supp. 1187 (D.R.I.1969). The petitioners, relying on Martin v. Fischbach Trucking Co., 183 F.2d 53 (1st Cir. 1950), contend that the "doing business" test under 1391(c) is more stringent than the "doing business" test for jurisdictional purposes applied in diversity actions where the test is a matter of state law. In *Martin*, however, the court expressly noted that "[i]t is not averred that [defendant] is in fact doing business in that state." Id. at 54. In my view, *Martin* stands for the proposition that Massachusetts'

"implied consent" law, providing jurisdiction over nonresidents involved in accidents with Massachusetts residents occurring within the state, does not support venue by a "doing business" standard when the only alleged act of the defendant was one of its agents driving through the state.

I am of the opinion that the decision of Judge Pettine in Westphal v. Stone Mfg. Co., 305 F.Supp. 1187 (D.R.I.1969) correctly states the proper approach to the issue of venue when jurisdiction has been established by state standards. When a state has adopted the policy of extending its jurisdiction to constitutionally permissible limits as have New Hampshire, Sanders Associates, Inc. v. Galion Iron Works & Mfg. Co., 304 F.2d 915 (1st Cir. 1962), and Rhode Island, Conn v. ITT Aetna Finance Co., 252 A. 2d 184 (R.I.1969), then:

> "doing business" in 1391(c) for venue purposes under the federal standard and necessary "minimum contacts" for amenability to service of process within the frame work of constitutional due process as developed by state case law should be equivalents. Westphal, *supra*, at 1191.

This approach is now generally accepted. See Houston Fearless Corp. v. Teter, 318 F.2d 822 (10th Cir. 1963); Carter-Wallace, Inc. v. Ever-Dry Corp., 290 F.Supp. 735 (S.D.N.Y.1968); Crane Co. v. Federal Hydronics, Inc., 240 F.Supp. 180 (W.D.Pa.1965); Nelson v. Victory Elec. Works, Inc., 210 F.Supp. 954 (D.Md. 1962); 1 Moore's Federal Practice ¶ 0.-142 at 1499–1500.

The facts here, unlike those in *Martin, supra,* support jurisdiction under both federal and state standards. Since Randy engaged in continuous activity in New Hampshire for four months, it would only be an exercise in semantics to apply two different standards of "doing business" for what is essentially the same purpose—determining whether this district is the proper forum. Since Randy was doing business

---

4. This assumes, of course, that the requisite $10,000 damages exist.

in this district when the claim arose and one of its agents was properly served while the business was being carried on, the requirements of venue have been met.  See Farmers Elevator Mut. Ins. Co. v. Carl J. Austad & Sons, Inc., 343 F.2d 7 (8th Cir. 1965).

Whether this case is one of summary jurisdiction in the Referee or requires a plenary action in the bankruptcy court or in this court,[5] I find that jurisdiction, service, and venue in this district are proper.  The Referee's decision is affirmed and the case is remanded for determination of whether the Referee has summary jurisdiction to hear the turnover petition.

---

5. The trustee of Tech has filed a civil action in this court, Gerald Cabitt, Trustee in Bankruptcy of Tech Consolidated v. Randy Mfg. Co., Inc., Civ.No. 3122 (D.N.H., filed May 11, 1970), and motions to dismiss for lack of jurisdiction and venue were denied on July 8, 1970, without opinion.  Although 11 U.S.C. §§ 96(b), 107(e), and 110(e) (3) use the term "bankruptcy court," it has been argued that a plenary action should be heard in the district court sitting as a court of first instance.  See 2 Collier on Bankruptcy ¶ 23.15 at 605.  This issue is not presented here and need not be decided.